DOWNERS GROVE VOLKSWAGEN, INC., d/b/a Downers Grove Saab, Plaintiff-Appellant, v. WIGGLESWORTH IMPORTS, INC., Defendant-Appellee.

Second District   No. 2—88—1266

Opinion filed October 23, 1989.

Maurice P. Raizes and Cornelius P. Brown, both of Cohon, Raizes & Regal, of Chicago (Carol L. Johnson, of counsel), for appellant.

Gregory A. Rode, of Sheridan & Associates, of Wheaton (Gerald M. Sheridan, Jr., of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Downers Grove Volkswagen, Inc., sued defendant, Wigglesworth Imports, Inc., over a brochure published by defendant that plaintiff alleges reported false information about plaintiff's services. All three counts of plaintiff's amended complaint were dismissed pursuant to defendant's section 2—615 motion. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.) Plaintiff elected to stand on its amended complaint and timely filed this appeal.

Plaintiff raises the following issues: (1) whether the trial court erred in dismissing count I because plaintiff failed to allege a reasonable business expectancy and whether plaintiff sufficiently pleaded damages; (2) whether the trial court erred in dismissing count II because plaintiff failed to allege special damages; and (3) whether the trial court erred in dismissing count III because plaintiff was not a consumer under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). We affirm in part and reverse and remand in part.

In count I of its complaint, plaintiff alleged tortious interference with its business, alleging that defendant sent to numerous owners of Saab automobiles, including customers of plaintiff, a brochure which falsely reported the prices plaintiff charged for service inspections. Plaintiff alleged that the price it charged for a 15,000-mile inspection was approximately $123 less than that stated in the brochure, and the price listed in the brochure could not have been verified as the brochure stated. Plaintiff alleged defendant should have known that the prices in the brochure were false and that defendant's acts were motivated by malice with the express intention of maliciously hindering plaintiff's business. Plaintiff alleged it suffered damage to its standing, reputation, prestige, good will, and business.

In count II plaintiff sued defendant for libel. Plaintiff alleged defendant intended to convey to customers that plaintiff was gouging its customers with its prices, and at least one customer intended to stop transacting business with plaintiff because of the brochure.

In count III plaintiff sued for damages under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). Plaintiff alleged that the brochure disparaged plaintiff's services, thus violating section 2(8) of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 312), which is incorporated in the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 262). Plaintiff alleged the same damages as count I.

Defendant moved to dismiss plaintiff's amended complaint under

section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Defendant contended count I was deficient because it failed to allege a reasonable expectancy where it failed to allege an enforceable contract, and it failed to allege facts to prove the elements of tortious interference with prospective business, especially damages. The trial court ruled that count I failed to state a cause of action because it failed to allege a reasonable business expectancy.

Defendant moved to dismiss count II because it failed to allege facts to constitute libel *per se* or libel *per quod*. The court dismissed this count because plaintiff failed to allege special damages.

Defendant moved to dismiss count III because plaintiff failed to allege actual damages. The trial court ruled that plaintiff could not sue under the Consumer Fraud and Deceptive Business Practices Act because plaintiff was not a consumer under the Act.

■ Plaintiff contends the trial court erred in dismissing all three counts of its complaint under section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). A cause of action will not be dismissed under section 2—615 unless it clearly appears that no set of facts can be proved which entitle plaintiff to recover. (*Century Universal Enterprises, Inc. v. Triana Development Corp.* (1987), 158 Ill. App. 3d 182, 187.) All facts which are well pleaded are to be construed as true, as well as all reasonable inferences favorable to the nonmoving party which can be drawn from those facts. 158 Ill. App. 3d at 187.

■ Plaintiff first contends the trial court erred in dismissing count I, which alleged tortious interference with prospective business expectancies. To plead a cause of action for tortious interference with prospective business expectancies, plaintiff must allege (1) a reasonable expectation of entering into a valid business relationship; (2) defendant's knowledge of the expectancy; (3) defendant's intentional and malicious interference to defeat the expectancy; and (4) injury. (*Resudek v. Sberna* (1985), 132 Ill. App. 3d 783, 790; see also Restatement (Second) of Torts §766B (1979).) The trial court held plaintiff failed to plead that it had a reasonable business expectancy. Plaintiff's complaint alleged that it had good relations with its customers and that approximately 80% of the people who bought Saab automobiles from plaintiff returned for inspection services, and it expected to continue to provide inspection services to its customers. The trial court ruled that plaintiff's expectancy was not reasonable because "[t]aken to its logical conclusion, such an expectation would result in making anyone who induces prior customers of the plaintiff to get work done at a competitor liable for a business tort against the plaintiff."

■ The trial court's analysis is flawed. The trial court is correct

that one may not simply sue any competitor who lures away customers; however, the privilege of competition is not available to those who use wrongful means to interfere. (See Restatement (Second) of Torts §768 (1979).) Neither party has raised the issue of whether plaintiff has adequately pleaded wrongful conduct in this case, but to resolve the trial court's ruling, we must address it. Plaintiff has alleged that defendant published false information about its prices for services and that defendant could not have verified these prices as it stated in the brochure. Plaintiff alleged defendant should have known the prices were false and defendant's conduct was done with malice to deliberately hinder plaintiff's business. The reasonable inference from these allegations is that defendant published information about plaintiff's prices without knowing whether the prices were accurate. Thus, plaintiff essentially alleges that defendant published the information with reckless disregard for its truth. These pleadings fall short of alleging the clearly improper conduct of fraudulent misrepresentation, a representation which to the knowledge or belief of its utterer is false (Restatement (Second) Torts §767 comment *c* (1979)). In our opinion, however, an allegation that a party essentially printed information with a reckless disregard for the truth is sufficient to allege improper conduct. In the Restatement (Second) of Torts section 767 (1979), the following factors are listed for considering whether conduct is improper:

> "(a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and,
>
> (g) the relations between the parties."

■ Consideration of these factors shows that plaintiff has sufficiently alleged wrongful conduct. The alleged nature of the defendant's conduct in this case is a reckless disregard for the truth. The defendant's motive and interest may be to compete, but there are no social interests in protecting defendant's right to publish pricing information about a competitor when it does not know whether that information is true. To the contrary, there is a great social interest to discourage a party from printing pricing information about a competitor when it has no knowledge of its truth or falsity.

■ The trial court confused the issue of competition with the issue of whether plaintiff alleged a reasonable business expectancy. Plaintiff must plead facts to show interference of a business relationship with specific third parties or an identifiable prospective class of third persons. (*Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400.) This does not mean, however, that plaintiff must allege the identity of the third party or parties by name. (*Crinkley v. Dow Jones & Co.* (1978), 67 Ill. App. 3d 869, 878.) In *Crinkley*, the court aptly pointed out that the reason for the rule stated in *Parkway* was that the plaintiff had failed to allege the existence of any third party. (*Crinkley*, 67 Ill. App. 3d at 878-79.) Plaintiff's allegation that approximately 80% of the people that bought Saabs from its dealership return for inspection services and that it expected to continue to provide service to its customers is sufficient to allege a reasonable expectancy of a prospective business relationship with an identifiable class of third persons. Here, unlike *Parkway*, a class of identifiable third persons, past and future customers, has been alleged. (See *O'Brien v. State Street Bank & Trust* (1980), 82 Ill. App. 3d 83, 85 (allegation of numerous customers and suppliers sufficiently alleged an identifiable third party).) Furthermore, this expectancy is reasonable. As *North Broadway Motors, Inc. v. Fiat Motors of North America, Inc.* (N.D. Ill. 1984), 622 F. Supp. 466, 469, held, the opportunity to obtain customers is an expectancy protected by the tort of interference with a business expectancy. See also *Knapp v. McCoy* (N.D. Ill. 1982), 548 F. Supp. 1115, 1117, citing Prosser, Torts §130, at 950 (4th ed. 1971).

■ Defendant also contends count I is deficient for failure to allege actual damages. Though this contention was not ruled upon by the lower court, an appellate court may sustain the trial court's dismissal of a complaint upon any basis found in the record. (*Goldberg v. Goldberg* (1981), 103 Ill. App. 3d 584, 587.) Plaintiff alleged that its "standing, reputation, prestige, good will, and business has [*sic*] been greatly damaged and shall in the future be damaged." Defendant does not contend that plaintiff was required to plead special damages but argues that plaintiff has failed to plead actual damages. Defendant does not define what it means by actual damages, but cites in support of its position: *O'Brien* (82 Ill. App. 3d at 85), where plaintiff alleged bankruptcy; *La Rocco v. Bakwin* (1982), 108 Ill. App. 3d 723, where plaintiff sought damages for a dissolved law practice; *North Broadway Motors, Inc.* (622 F. Supp. 466), where plaintiff alleged its dealership had to be sold at a loss; and *Knapp* (548 F. Supp. 1115), where plaintiff alleged lost profits. These cases may provide examples of

damage pleading in more specific terms than the complaint in this case; however, nothing in these cases suggests that this degree of particularity is required as a rule. Defendant has not cited one case where a pleading has been dismissed for failure to plead general damages.

"It is an established rule of pleading that general damages, as distinguished from special damages, need not be specifically pleaded. This rule applies whether the action is in contract or tort, and for personal injuries as well as property damage. The reason for the rule is that the defendant should not be surprised by a proffer of proof of the item of damage, since it is the natural and necessary consequence of the compensable injury alleged." 22 Am. Jur. 2d *Damages* §825, at 870-71 (1988).

See also *City of Chicago v. McLean* (1890), 133 Ill. 148.

In this case, though plaintiff's allegation of damages is far from an exemplary model of Illinois pleading, it appears sufficient to plead general damages. The reasonable inference from the facts alleged is that plaintiff lost customers.

In his second issue, plaintiff contends the trial court erred in dismissing count II for libel on the basis that it failed to plead the required special damages for libel *per quod*. Plaintiff does not dispute the trial court's determination that the action was libel *per quod*, but contends that it pleaded special damages.

■■ ■ To state an action for libel *per quod*, special damages must be alleged with particularity, and general allegations as to damages are insufficient. (*Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 266.) In count II, plaintiff alleged:

"At least one regular customer of [p]laintiff received the [b]rochure and intended to stop transacting business with [p]laintiff because of the false prices listed on the [b]rochure."

Citing *Halpern v. News-Sun Broadcasting Co.* (1977), 53 Ill. App. 3d 644, plaintiff contends this allegation is sufficient to plead special damages. In *Halpern*, the court held that an allegation that plaintiff lost income and continues to lose income as a result of patients leaving the home and other patients removing their applications was a sufficient allegation of special damages. (*Halpern*, 53 Ill. App. 3d at 653; but see *Bruck v. Cincotta*, 56 Ill. App. 3d at 267-68.) Defendant argues that plaintiff's allegation is distinguished from *Halpern* because plaintiff's allegation that a customer "intended" to no longer do business does not allege actual damage. Defendant's argument is convincing. Though one may have intended to stop doing business with plaintiff, there is no damage if that person did not actually stop doing

business with plaintiff. Since plaintiff does not allege that a customer stopped doing business, plaintiff's complaint fails to allege special damages.

Though it is not necessary to address defendant's other argument in support of dismissal of the complaint, it is noted that defendant's argument that plaintiff's complaint fails to allege a cause of action for libel is correct. Words which reflect on a business's integrity or reputation may give rise to a defamation action. (*Crinkley*, 67 Ill. App. 3d 869.) Here, false prices do not impugn the integrity of the plaintiff.

■ Lastly, plaintiff contends the trial court erred in dismissing count III, which alleged violation of the Consumer Fraud and Deceptive Business Practices Act (the Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). The trial court ruled that the Act applied only to consumers and plaintiff was not a consumer under the Act.

Section 2 of the Act provides:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." Ill. Rev. Stat. 1987, ch. 121½, par. 262.

Section 270a of the Act provides that any person who suffers damage as a result of the Act may bring an action against such person and the court may in its discretion award damages. (Ill. Rev. Stat. 1987, ch. 121½, par. 270a.) The preamble to the Act states that it is "to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Ill. Rev. Stat. 1987, ch. 121½, preamble to the Consumer Fraud and Deceptive Business Practices Act.

Plaintiff contends that the Act clearly does not limit its protection strictly to consumers. The case law interpreting whether the Act is limited to consumers is conflicting. Plaintiff relies on a fourth district case with facts very similar to the instant case in which the court upheld liability under the Act. (*M & W Gear Co. v. AW Dynamometer, Inc.* (1981), 97 Ill. App. 3d 904.) In *M & W*, defendant was found lia-

ble under the Act for publishing misleading advertising about plaintiff's product. (97 Ill. App. 3d at 913.) The court rejected defendant's argument that plaintiff was required to prove and allege that defendant's conduct had an adverse affect on the public. (97 Ill. App. 3d at 914.) Another case cited by plaintiff is *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.* (N.D. Ill. 1987), 657 F. Supp. 1486. In this case, plaintiff alleged defendant made misrepresentations to prospective customers that its product was patented and approved by the United States Food and Drug Administration. (657 F. Supp. at 1493.) Interpreting Illinois law, the court stated:

"[D]eceptive conduct is not actionable under the Consumer Fraud Act unless the conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *See, e.g., Heritage Ins. Co. v. Bank of Cicero,* 629 F. Supp. 1412, 1419 (N.D. Ill. 1986). However, businesses have standing to sue under the Consumer Fraud Act to redress competitive injury they suffer when other businesses deceive customers. *Newman-Green Inc. v. Alfonzo-Larrain,* 590 F. Supp. 1083, 1087 & n.6 (N.D. Ill. 1984). According to the complaint EWL made the alleged misrepresentations 'in the marketplace and to actual and/or prospective customers.' Count III states a claim for damages under the Consumer Fraud Act." 657 F. Supp. at 1493.

Defendant counters that two recent cases from the first and second districts have held that the Act does not apply to businesses which are not suing as consumers. In *Allcare, Inc. v. Bork* (1988), 176 Ill. App. 3d 993, 1003, the Appellate Court for the First District held the Act was "intended to provide redress only to consumers generally, not to businesses injured by other businesses where they are not consumers of each other's goods or services." It is noted that the statement in *Allcare* is *dicta.* The court made this statement after holding that the cause of action was barred for other reasons. (176 Ill. App. 3d at 1003.) In *Century Universal Enterprises, Inc. v. Triana Development Corp.* (1987), 158 Ill. App. 3d 182, 199, this court held that the disputes of businessmen over a contract were not covered under the Act where the businessmen were not consumers of each other's goods or services. (*Century Universal Enterprises,* 158 Ill. App. 3d at 199.) Defendant contends that this second district case takes precedence over *M & W Gear Co.* A closer look at *Century Universal Enterprises, Inc.,* however, reveals that the holding was limited to the facts of that case, and it may not apply to the instant case.

In *Century Universal Enterprises, Inc.,* a financier and developer

were disputing a contract. In discussing the Act, *Century Universal* referred often to *Newman-Green, Inc.*, a Federal district court case that interpreted Illinois cases covering the Act. (*Newman-Green, Inc. v. Alfonzo-Larrain* (N.D. Ill. 1984), 590 F. Supp. 1083.) In *Newman-Green, Inc.*, the court found that the case law in Illinois has been in agreement that, in breach of contract cases involving businesses, the Act does not provide for recovery. (590 F. Supp. at 1086.) The courts have based this rule on the belief that the legislature, in creating a private cause of action under the Act, did not intend to replace Illinois' common law of contracts and fraud. (*Century Universal*, 158 Ill. App. 3d at 199, citing *Newman-Green, Inc.*, 590 F. Supp. at 1086.) Thus, in *Century Universal Enterprises, Inc.*, the Act clearly did not apply because the parties were businesses, not consumers of each other's product, who were suing over a contract.

*Century Universal Enterprises, Inc.* should not be read, however, to hold that all disputes between businesses which are not consumers of each other's goods or services are not covered under the Act. In *Newman-Green, Inc.* the court found that Illinois courts have not allowed recovery for all common-law contract and fraud actions, and the question was to determine whether the action has characteristics which bring it within the Act. (590 F. Supp. at 1086.) The court found that Illinois courts have restricted the Act's application by requiring either that defendant's conduct cause a public injury (*Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580; *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212), or that the alleged conduct have an affect on consumers generally. (*Newman-Green, Inc.*, 590 F. Supp. at 1086-87.) The court found that the public injury requirement was not uniform. This is demonstrated by *M & W Gear Co.* and also *Century Universal Enterprises, Inc.*, where this court held that it accepted plaintiff's contention that one does not need to allege a public injury to recover under the Act. (*Century Universal Enterprises, Inc.*, 158 Ill. App. 3d at 198.) *Newman-Green, Inc.*, did not decide whether a public injury should be required because it found that the requirement that the alleged conduct have an effect on consumers generally was uniformly applied in Illinois, and the alleged conduct in *Newman-Green, Inc.* failed to meet this requirement. (*Newman-Green, Inc.*, 590 F. Supp. at 1087.) The court then went on to state: "Certainly a fair reading of the amendment [which expanded standing to businessmen in 1973] is that the General Assembly simply intended to grant businessmen standing to sue to redress competitive injury they suffer when other businessmen deceive customers." 590 F. Supp. at 1087.

With the exception of the statement in *Allcare, Inc.*, which was *dicta*, no cases have held that the Act protects only consumers. The Act is to be liberally construed. (*Century Universal Enterprises*, 158 Ill. App. 3d at 198.) "There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties." (*Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 495.) The analysis in *Newman-Green, Inc.* accurately poses the issue as a question of whether the alleged conduct has characteristics which bring it within the Act. Thus, where the dispute involves two businesses who are not consumers, the proper test is as stated in *Pain Prevention Lab*, whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. (*Pain Prevention Lab, Inc.*, 657 F. Supp. at 1493.) Here, where plaintiff has alleged defendant published false information about its prices for services, plaintiff has alleged conduct which implicates consumer-protection concerns. Thus, plaintiff has standing to sue under the Act.

■■■ Defendant also contends that plaintiff's allegation of damages is deficient under this count. This argument is without merit. Plaintiff alleged that its "standing, reputation, prestige, good will and business has been greatly damaged and shall in the future be damaged." There is no language in the Act which requires a plaintiff to plead special damages. (See *Unique Concepts, Inc. v. Manuel* (N.D. Ill. 1987), 669 F. Supp. 185, 190.) As already discussed, plaintiff's allegation is sufficient to allege general damages.

Accordingly, we affirm the judgment of the circuit court dismissing count II, and we reverse the judgment of the circuit court dismissing counts I and III and remand for proceedings consistent with the views expressed herein.

Reversed and remanded.

UNVERZAGT, P.J., and WOODWARD, J., concur.