ISRAELI AIRCRAFT INDUSTRIES, LTD., Plaintiff,

v.

SANWA BUSINESS CREDIT CORPORATION and Sanwa Bank of Japan, Defendants.

No. 92 C 6036.

United States District Court, N.D.Illinois, Eastern Division.

March 22, 1993.

Gregory Adamski and Karen Conti, Adamski & Conti, Chicago, IL, for plaintiff.

Sanwa (Business & Bank), Arnold A. Pagniucci, Lowell E. Sarnoff, Christine M. Godewes, Sachnoff & Weaver, Ltd., Chicago, IL, for defendants.

Dale M. Cohen, Donald P. Horwitz, Ian A. Schwartz, Sonnenschein, Nath & Rosenthal, Michael A. Sandberg, Anti Defamation League of B'Nai B'Rith, Chicago, IL, for amicus—Anti Defamation League of B'Nai B'Rith.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Plaintiff Israeli Aircraft Industries, Ltd., an Israeli corporation, alleges that defendants Sanwa Business Credit Corporation ("Sanwa") and Sanwa Bank of Japan "torpedoed" the formation of a joint venture between Israeli Aircraft and Quadrant Management Inc. ("Quadrant"). The purpose of the proposed joint venture between Israeli Aircraft and Quadrant was to bid on the assets of Fairchild Aircraft Corporation ("Fairchild"), a bankrupt American corporation. Plaintiff claims that defendants violated the anti-boycott provisions of the Export Administration Act ("EAA"), 50 U.S.C.App. § 2407. Plaintiff also alleges that defendants tortiously interfered with its prospective economic advantage and conspired against plaintiff in violation of Illinois common law. Defendants have moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

## FACTS

Sanwa was the senior lender to, and a secured creditor of, Fairchild, a manufacturer of small aircraft. Fairchild filed for bankruptcy protection in February 1990, and a final bid deadline of September 17, 1990 was set for the purchase of Fairchild's assets. Around July 1990, Quadrant expressed an interest in purchasing Fairchild's assets, and officials from Quadrant met with Sanwa management to negotiate the restructuring of Fairchild's outstanding debt to Sanwa. Sanwa informed Quadrant that in order to continue negotiations on the purchase of Fairchild's assets, Quadrant would have to find a

partner that was experienced in the aviation industry.

Quadrant and Israeli Aircraft then signed a letter of intent to enter into a joint venture for the purpose of acquiring certain Fairchild assets. Sanwa insisted that Israeli Aircraft represent a substantial interest in the acquiring entity, and this requirement was met in the letter of intent. After several months of negotiation, Israeli Aircraft, Quadrant, and Sanwa reached agreement on all of the major terms of the proposed asset acquisition. The parties scheduled a meeting for September 11, 1990 to finalize the agreement.

On September 11, 1990, Sanwa advised Quadrant that Sanwa Bank had ordered Sanwa to refuse to extend credit to a venture that involved a participant with ties to Israel. This communication occurred seven days before the bid deadline and one day before the scheduled meeting between Israeli Aircraft, Quadrant and Sanwa. Quadrant tried to persuade the Sanwa defendants to reconsider but Sanwa refused, restating its position that Sanwa was withdrawing because Israeli Aircraft was a business concern organized under the laws of Israel. Plaintiff alleges that Israeli Aircraft and Quadrant were unable to complete the joint venture to submit a bid for the purchase of Fairchild's assets as a direct result of Sanwa's and Sanwa Bank's refusal to extend credit to the joint venture.

■ In their motion, defendants argue that Counts I and II, which are founded on the anti-boycott provisions of the EAA, should be dismissed because there is no private right of action under the Act. Defendants further contend that the common law claims pled in Counts III, IV and V should be dismissed for failure to state a claim. In reviewing defendants' motion to dismiss under Rule 12(b)(6), "we must accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them." *Gibson v. Chicago*, 910 F.2d 1510, 1520 (*quoting Yekesigian v. Nappi*, 900 F.2d 101, 102 (7th Cir.1990)). A plaintiff fails to state a claim upon which relief may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leahy v. Board of Trustees of Com-* *munity College District No. 508*, 912 F.2d 917, 921 (7th Cir.1990) (*quoting Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

## ANALYSIS

### I. The Anti–Boycott Provisions of the Export Administration Act

Plaintiff brings this action under § 2407(a)(1)(A) of the EAA which states:

(1) For the purpose of implementing the policies set forth in subparagraph (A) or (B) of paragraph (5) of section 3 of this act. . . . the President shall issue regulations prohibiting any United States person, with respect to his activities in the interstate or foreign commerce of the United States, from taking or knowingly agreeing to take any of the following actions with intent to comply with, further, or support any boycott fostered or imposed by a foreign country against a country which is friendly to the United States and which is not itself the object of any form of boycott pursuant to United States law or regulation:

(A) Refusing, or requiring any person to refuse, to do business with or in the boycotted country, with any business concern organized under the laws of the boycotted country with any national or resident of the boycotted country, or with any other person, pursuant to an agreement with, a requirement of, or a request from or on behalf of the boycotting country. . . .

50 U.S.C.App. § 2407(a)(1)(A)(1979).

Plaintiff does not allege that there is an express private right of action under the anti-boycott provision of the EAA. 50 U.S.C.App. § 2407 (1979). Counts I and II of the complaint, therefore, must be dismissed unless there is an implied right of action under § 2407 of the EAA.

#### The Standard for an Implied Private Right of Action

■ In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth a four-part test for determin-

ing whether a private right of action can be implied in a statute:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff. Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And, finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citation omitted). Recently, however, the Court has shifted its focus to the second factor in *Cort:* "Whether Congress, in enacting the provision at issue intended to create a private remedy." *Spicer v. Chicago Bd. of Options Exch. Inc.,* 977 F.2d 255, 258 (7th Cir.1992).

That Congress failed to expressly consider a private right of action does not necessarily mean it did not intend to include such a right in the statute. *Community & Economic Dev. Ass'n. of Cook County, Inc. v. Suburban Cook County Area Agency on Aging,* 770 F.2d 662, 665 (7th Cir.1985). "Rather, as an implied cause of action doctrine suggests, 'the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question.'" *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (*quoting Cannon v. University of Chicago,* 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979)). When determining congressional intent, therefore, the Court looks to the language and structure of the statute, *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979); the circumstances surrounding the statute's enactment, *Id.;* the legislative history of the statute, *Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 533–34, 109 S.Ct. 1282, 1287–88, 103 L.Ed.2d 539 (1989); *Thompson,* 484 U.S. at 181–82, 108 S.Ct. at 517–18; the contemporary legal con-

text in which Congress passed the statute, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 381, 102 S.Ct. 1825, 1840–41, 72 L.Ed.2d 182 (1982); the remaining *Cort* factors, *Thompson,* 484 U.S. at 179, 108 S.Ct. at 516; and "other tools of statutory construction." *Spicer,* 977 F.2d at 258. In sum, "courts may not recognize an implied remedy absent persuasive evidence that Congress intended to create one." *Id. See also Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL–CIO,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981) ("unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist").

## Legislative History

The only mention of a private cause of action in the legislative history of § 2407 comes from a report on the Senate version of the anti-boycott provision of the EAA. The report states that "[t]he damage of unwarranted allegations in this highly sensitive area has prompted the committee to leave enforcement in the hands of the Executive Branch instead of creating a private right of action." S.Rep. No. 104, 95th Cong., 1st Sess. 22 (1977). There are no references to a private right of action in the floor debates. In 1976, a bill was introduced in the House of Representatives that called for a private right of action for treble damages under § 2407. *See* H.R. 15377, 94th Cong., 2d Sess. § 6(g) (1976). But Congress never acted on the bill. Since the Supreme Court is generally "reluctant to draw inferences from Congress' failure to act," *Schneidewind v. ANR Pipeline Company,* 485 U.S. 293, 306, 108 S.Ct. 1145, 1154, 99 L.Ed.2d 316 (1988), this Court is also reluctant to do so.

Plaintiff claims that other legislative history and the circumstances surrounding the adoption of § 2407 support a finding of an implied private right of action for Israeli Aircraft. Section 2407 was part of the 1977 amendments that were added to the Export Administration Act of 1979. *See* H.R.Rep. No. 200, 96th Cong., 1st Sess. (1979). The legislative debates reveal that Congress enacted § 2407 in response to the longstanding

Arab boycott of Israel. *See* 123 Cong.Rec. H11418–H11449 (1977). Section 2407 was intended to stop the secondary and tertiary boycotts that Congress considered detrimental to both the United States and Israel.[1] Section 2407 made it illegal for American companies and individuals to cooperate with secondary or tertiary boycotts against any country on friendly terms with the United States. 50 U.S.C.App. § 2407.

In its brief, plaintiff argues that "[t]his history leaves no doubt of Congress' intent that all available legal sanctions be used to fight the Arab boycott and that every avenue, judicial as well as administrative, remain open to accomplish that goal." (Pl's.Mem. at 9). This argument assumes that because Congress abhorred the Arab boycott it wished to enact every possible right of action to combat it. Yet plaintiff cites no authority to support this sweeping conclusion, and the Court has found none.

### Especial Benefit

The question of whether § 2407(a)(1)(A) was enacted for the benefit of Israeli Aircraft is "answered by looking to the language of the statute itself." *Cannon*, 441 U.S. at 689, 99 S.Ct. at 1953. Plaintiff contends that the language of the statute indicates that Congress intended § 2407(a)(1)(A) to operate like a civil rights bill because it protects a specific, identifiable group against clearly defined discriminatory intent. Plaintiff states that § 2407(a)(1)(A) imposes a duty and designates a victim group to be protected, namely, any business concern organized under the laws of Israel. Plaintiff concludes, therefore, that Congress did not merely intend to ban prohibited conduct because the anti-boycott provision focuses on a benefited class: the victims of the boycott. Plaintiff bases this argument on the discussion of implied private causes of action in *Cannon* and claims that *Cannon* should be followed because the case properly focuses on the law at the time Congress enacted these amendments to the EAA. *See Cannon*, 441 U.S. at 690–94, 99 S.Ct. at 1954–56; *see also Spicer*, 977 F.2d at 258 (courts look to "contemporary legal context" when determining congressional intent).

Plaintiff is correct in his assertion that courts have found an implied private right of action when a statute grants a right to a benefited class of persons or identifies a class of persons Congress meant to benefit. By contrast, courts have refused to find an implied right of action when a statute merely prohibits general unlawful conduct. *See Cannon*, 441 U.S. at 690–94, 99 S.Ct. at 1954–56; *City of Evanston v. Regional Transp. Auth.*, 825 F.2d 1121, 1123 (7th Cir. 1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). Section 2407(a)(1)(A) of the EAA states that the President shall issue regulations prohibiting any United States person from supporting a boycott by refusing, or requiring another to refuse, to do business with or in a boycotted country or with any national or resident of the boycotted country or with any other person. 50 U.S.C.App. § 2407(a)(1)(A). When compared to statutory language examined in *Cannon*, the language in § 2407(a)(1)(A) is closer to that of general prohibitory statutes than the language of civil rights statutes. *See Cannon*, 441 U.S. at 689–94, 99 S.Ct. at 1953–57.

In *Cannon*, the Court stated that "the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action. With the exception of one case ... this Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case." *Id.* at 693 n. 13, 99 S.Ct. at 1955–56 n. 13.[2] The Court in *Cannon* also stated that:

---

**1.** United States companies and individuals with ties to Israel were being blacklisted by Arab countries, companies and individuals, and by United States companies and individuals who feared being blacklisted by Arab interests and, therefore, complied with the boycott.

**2.** *See, e.g., Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 235 n. 3, 90 S.Ct. 400, 403–04 n. 3, 24 L.Ed.2d 386 (1969) ("All citizens of the United States shall have the same right ... as enjoyed by white citizens ..."); *Allen v. State Bd. of Elections*, 393 U.S. 544, 555, 89 S.Ct. 817, 826, 22 L.Ed.2d 1 (1973) ("no person shall be denied the right to vote ..."); *Tunstall v. Broth-*

a statute declarative of a civil right will almost have to be stated in terms of the benefited class. Put somewhat differently, because the right to be free of discrimination is a "personal" one, a statute conferring such a right will almost have to be phrased in terms of the persons benefited. Conversely, the Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large.

*Id.* (citations omitted).

Section 2407(a)(1)(A) is not stated in terms of a benefited class, but as a general prohibition. Furthermore, the statute does not grant any rights to a class of persons. Instead, the statute requires that United States persons refuse to take actions that further boycotts. *See* 50 U.S.C.App. § 2402(5)(A), (B). This prohibition will probably benefit companies like Israeli Aircraft and it is likely that every person in the United States and many other foreign countries will also benefit. But there is no class for whose especial benefit § 2407(a)(1)(A) was enacted.

### Legislative Scheme

The EAA has very complex enforcement provisions. 50 U.S.C.App. §§ 2410–12 (1979) (amended 1988). The anti-boycott provisions originally enacted by Congress gave "the head of any department or agency exercising any function thereunder" the authority to investigate in order to enforce the Act. 50 U.S.C.App. § 2411(a), P.L. 96–72, 93 Stat. 531 (1979). Congress amended the enforcement provision in 1985 to give the Secretary of Commerce the power to enforce § 2407, 5 U.S.C.App. § 2411(a)(3)(A), P.L. 99–64, 99 Stat. 148 (1985). Since the enactment of § 2407, the Department of Commerce has produced an extensive and detailed scheme for enforcement of the anti-boycott provisions. 50 U.S.C.App. § 2412, P.L. 99–64, 99 Stat. 148 (1985). *See* Export Administration Regulations, 15 C.F.R. § 369 *et seq.* (1992).

Plaintiff argues that a private right of action complements the statutory enforcement scheme because the enforcement provisions preclude the victim from playing a significant role in enforcement proceedings. According to plaintiff, *Cannon* and its progeny support the proposition that when a victim is not allowed to participate in enforcement proceedings, a private cause of action cannot be ruled out. What the Court in *Cannon* actually said is that it "has sometimes refused to imply private rights of action where administrative or like remedies are expressly available." *Cannon*, 441 U.S. at 708, 99 S.Ct. at 1963 (citations omitted). But the Court "has never withheld a private remedy where the statute *explicitly* confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute." *Id.* at 708 n. 41, 99 S.Ct. at 1963 n. 41 (citations omitted) (emphasis added). Therefore, under *Cannon* the victim's ability to participate is given considerable weight only when the first *Cort* factor—the statute benefits a specific class of persons—is satisfied.

Plaintiff also asserts that § 2510(i)(1) authorizes, by implication, a private right of action. Section 2510(i)(1) provides that nothing in the penalties section of the Act "limits (1) the availability of other administrative or judicial remedies with respect to violations of this Act or any regulation, order or license issued under this act." 50 U.S.C.App. § 2510(i)(1) (1979) (formerly § 2410(g), amended 1985). The only Court to consider the issue concluded that § 2510(i)(1) does not imply a private right of action. *Bulk Oil (ZUG) A.G v. Sun Co., Inc.*, 583 F.Supp. 1134 (S.D.N.Y.1983), *aff'd.* 742 F.2d 1431 (2nd Cir.), *cert. denied,* 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). Citing legislative history in support, the court in *Bulk Oil* concluded that the provision was an attempt to "increase regulatory flexibility" by not limiting the government's options when it came time to enforce the act. *Id.* at 1141–42 (citing *Continuation of Authority for Regulation of Exports: Hearings Before the Committee on Banking and Currency, 89th Cong.,* 1st Sess. 5–27 (1965)). The legislative

*erhood of Locomotive Firemen & Enginemen, Ocean Lodge No. 76,* 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187 (1944) ("Employees shall

have the right to organize and bargain collectively through representatives.....").

history of this section supports the *Bulk Oil* court's conclusion.

In sum, a private right of action is not consistent with the legislative scheme provided for in the EAA. Plaintiff's arguments do not overcome the " 'elemental canon' of statutory construction that where the statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Karahalios*, 489 U.S. at 533, 109 S.Ct. at 1286–87 (*quoting Lewis*, 444 U.S. at 19, 100 S.Ct. at 246–47.). "In such cases, 'in the absence of strong indicia of contrary congressional intent, [the court is] compelled to conclude that Congress provided precisely the remedies it considered appropriate.' " *Id.* (*quoting Middlesex County Sewerage Authority v. Sea Clammers*, 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981)).

### Relegation to State Law

The EAA expressly provides that the provisions of § 2407 preempt any state or local law, rule or regulation on the issue. 50 U.S.C.App. § 2407(c) (1979). Plaintiff argues that protecting citizens against discrimination has always been the role of the federal government and that is why § 2407 preempts state law. But section 2407 cannot be characterized as a discrimination law. At most, the preemption clause shows that implying a private federal cause of action would not "intrude into an area traditionally committed to state law." *Cort*, 422 U.S. at 85, 95 S.Ct. at 2091. This factor weighs in plaintiff's favor.

Only two courts have dealt with the issue of whether § 2407 implies a private right of action. *Abrams v. Baylor College of Medicine*, 581 F.Supp. 1570 (S.D.Tex.1984), *aff'd. in part and rev'd in part on other grounds*, 805 F.2d 528 (5th Cir.1986); and *Bulk Oil*, 583 F.Supp. at 1138–43. The court in *Bulk Oil* found there was no implied private right of action under § 2407—a result with which this Court agrees. *Bulk Oil*, 583 F.Supp. at · 1143. The *Abrams* court reached the opposite conclusion. *Abrams*, 581 F.Supp. at 1581. The *Abrams* court based its finding of an implied right of action on the general purposes of the EAA. The court simply stated the statute's purpose, and on that basis concluded that grounds for implying a private right of action existed. *Abrams*, 581 F.Supp. at 1581. Because the analysis in *Abrams* falls short of what is required under *Cort* and its progeny, this Court declines to follow *Abrams*.

### Conclusion

■ Plaintiff has the burden of proving that Congress intended to imply a private right of action, *see Suter v. Artist*, — U.S. —, —, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992), and has not met that burden. The legislative history of the EAA is, at best, silent on the question at issue. The statutory language does not set forth a class of persons to be protected by the statute or imply a private right of action in any other way. The complex administrative scheme set forth by the statute and its regulations creates a presumption that Congress did not intend to imply any other remedy. And the applicable case law provides little support for plaintiff's position. Against these factors, plaintiff can only argue that the purpose of the statute was to prevent the boycott against Israel, that Israeli companies would benefit because of the anti-boycott provisions, and that an implied private right of action would complement the administrative scheme. Under the Supreme Court's formula for determining the existence of implied private causes of action, these factors are not sufficient to establish the requisite congressional intent.

### II. Tortious Interference with Prospective Economic Advantage

■ In Counts III and IV, plaintiff alleges tortious interference with prospective economic advantage against defendants. Under Illinois law, the elements of this tort are: (1) plaintiff's reasonable expectation of entering into a valid business relationship; (2) knowledge of that relationship on the part of the defendant; (3) intentional and malicious interference by the defendant to defeat the expectancy; and· (4) injury resulting from the interference. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 546 (7th Cir.1986); *Downers Grove Volkswagen Inc. v. Wigglesworth Imports, Inc.*, 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33 (2nd Dist.1989). The tort requires "an allegation of conduct directed by

the defendant toward a third party through which the defendant purposely causes that third party not to enter into or continue with a prospective contractual relationship with the plaintiff." *Westland v. Sero of New Haven, Inc.*, 601 F.Supp. 163, 166 (N.D.Ill.1985); *see also Parkway Bank & Trust Co. v. City of Darien*, 43 Ill.App.3d 400, 2 Ill.Dec. 234, 357 N.E.2d 211 (2d Dist.1976). But "a party cannot be liable in tort for interfering with its own contract." *F.E.L. Publications Ltd. v. Catholic Bishop of Chicago*, 754 F.2d 216, 221 (7th Cir.), *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985).

■ Defendants have not purposely caused a third party to refrain from entering into a contract with plaintiff. Plaintiff's allegations reveal that defendants merely broke off negotiations with Quadrant and Israeli Aircraft, and then informed Quadrant of their reasons for taking this action. All defendants did was cut short their own contract negotiations. True, Israeli Aircraft's joint venture with Quadrant failed as a result of defendants' actions, but the failure was not because defendants directed some action at Quadrant that made Quadrant quit negotiating with Israeli Aircraft.

In addition, to prevail on this tort plaintiff must establish a reasonable expectancy of entering into a valid business relationship. The Court agrees with defendants that the speculative prospective business deals identified by plaintiff do not rise to the level of reasonable business expectancies. In *Kemmerer v. John D. & Catherine T. MacArthur Found.*, 594 F.Supp. 121, 122–23 (N.D.Ill. 1984), the plaintiff sued defendant for tortiously interfering with plaintiff's reasonable expectation of obtaining a commission. The plaintiff and his client, the third party, had entered into an agreement under which plaintiff would receive a sales commission if the client succeeded in purchasing some property from the defendant. However, the plaintiff and his client never made an unconditional offer to purchase the property. The contract was, in essence, still being negotiated. The defendant subsequently sold the property to another party, and the plaintiff sued the defendant for his lost commission. The court held that because the parties were

still negotiating and no firm offer had been made, "[p]laintiff's desire for a commission was not a reasonable expectancy in this case." *Kemmerer*, 594 F.Supp. at 122.

Here, Israeli Aircraft and Quadrant had signed a non-binding letter of intent which "summarized the present mutual understandings and preliminary agreements ... reached between Israeli Aircraft and Quadrant." The letter of intent stated that Israeli Aircraft and Quadrant planned to form a company for the purpose of acquiring the assets of Fairchild. Plaintiff's valid business relationship with Quadrant, therefore, was dependent on the company's submitting a successful bid for the assets of Fairchild. Yet plaintiff alleges no facts that suggest it had a reasonable expectation of submitting a successful bid to the trustee of Fairchild. Plaintiff and Quadrant were still negotiating the formation of their own company, as well as the terms for restructuring Sanwa's debt. Plaintiff and Quadrant were not in a position to make a bid for Fairchild and never submitted a bid. As in *Kemmerer*, the "business" upon which plaintiff grounds its claims was a business relationship still under negotiation; the mere hope of submitting a successful bid was not a reasonable expectancy. Thus, plaintiff has failed to allege sufficient facts to establish the first and third elements of the tort of interference with prospective economic advantage.

### III. Conspiracy

■ Under Illinois Law, "civil conspiracy arises where two or more persons combine to accomplish by concerted action either a lawful purpose through unlawful means or an unlawful purpose through lawful means." *Belkow v. Celotex Corp.*, 722 F.Supp. 1547, 1550 (N.D.Ill.1989). A conspiracy cannot exist where the two or more persons involved in the alleged conspiracy were merely interchangeable entities or were essentially conducting a single act as a single entity. *See Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir.1972); *Thomas v. Rohner–Gehrig & Co.*, 582 F.Supp. 669, 673 (N.D.Ill.1984). Similarly, a conspiracy cannot exist between a principal and an agent or servant. *See Salaymeh v. Interqual, Inc.*, 155 Ill.App.3d

**694**

1040, 1044, 108 Ill.Dec. 578, 581–82, 508 N.E.2d 1155, 1158–59 (5th Dist.1987).

■ In its complaint, plaintiff sets forth its conspiracy claim against Sanwa Bank and Sanwa by repeating and realleging facts contained in paragraphs 50–57 of the complaint. Paragraph 55 alleges that "Sanwa Bank controls the affairs of Sanwa to the extent that Sanwa is the mere instrumentality of Sanwa Bank, and accordingly, the observance of the fiction of separate corporate existences under these circumstances would promote injustice." Plaintiff's conspiracy claim thus incorporates an allegation that Sanwa and Sanwa Bank are the same entity. Sanwa and Sanwa Bank are the only parties plaintiff implicates in the conspiracy. Accepting as true all of the well-pleaded facts in the complaint, plaintiff fails to allege a claim for conspiracy because, under Illinois law, a conspiracy must involve two or more parties.

Defendants' motion to dismiss all five counts of the complaint for failure to state a claim is granted.