**ISRAEL AIRCRAFT INDUSTRIES LTD., Plaintiff–Appellant,**

v.

**SANWA BUSINESS CREDIT CORPORATION and the Sanwa Bank, Limited, Defendants–Appellees.**

No. 93–1949.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1993.

Decided Feb. 8, 1994.

---

Gregory A. Adamski, Adamski & Conti, Chicago, IL, Stephen Wagner, Madeleine M. Plasencia, and Andrew P. Brozman (argued), Zellermayer, Gratch & Jacobs, New York City, for plaintiff-appellant.

Lowell E. Sachnoff (argued), Arnold A. Pagniucci, and Christine Bodewes, Sachnoff & Weaver, Chicago, IL, for defendants-appellees.

Dale M. Cohen, Donald P. Horwitz, Sonnenschein, Nath & Rosenthal; Steven M. Freeman, Michael A. Sandberg, Ruth L. Lansner, Anti–Defamation League, Chicago, IL, and Nathan Lewin, Miller, Cassidy, Larroca & Lewin, Washington, DC, for amici curiae.

Before WOOD, Jr., EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Sanwa Business Credit Corporation, the principal lender to Fairchild Aircraft Corporation, is the American subsidiary of a Japanese bank. After Fairchild entered bankruptcy, Israel Aircraft Industries, Ltd. (an Israeli corporation) and Quadrant Management, Inc., formed a joint venture to acquire Fairchild. They were unwilling to pay off Fairchild's debts at face value and asked Sanwa to accept the joint venture in lieu of Fairchild as the borrower under a revised credit arrangement. According to the complaint Sanwa said no, on instructions of its parent, for the sole reason that Sanwa Bank will not deal with any Israeli corporation so long as the League of Arab States maintains its boycott of Israel. The district court dismissed the complaint under Fed.R.Civ.P. 12(b)(6), holding that § 8 of the Export Administration Act, 50 U.S.C.App. § 2407, does not create a private right of action in favor of victims of foreign boycotts.

Section 8(a)(1) provides that "the President shall issue regulations prohibiting any United States person ... from taking or knowingly agreeing to take any of the following actions with intent to comply with, fur-

ther, or support any boycott fostered or imposed by a foreign country against a country which is friendly with the United States". Sanwa is a "United States person"; Israel is "friendly with the United States"; a refusal to lend with the motivation alleged in the complaint offends the regulations the Secretary of Commerce (the President's delegate) duly issued. See Executive Order No. 12214 (May 2, 1980) (delegating functions); 15 C.F.R. § 769.2 (defining forbidden practices). Israel Aircraft does not complain that the President violated his statutory obligation to promulgate regulations. The statute does not itself regulate private conduct, and it does not authorize private litigation. Instead it preempts claims under state law, § 8(c), 50 U.S.C.App. § 2407(c), without authorizing any substitute under federal law. What is more, Israel Aircraft does not contend that the Secretary of Commerce has failed to discharge his duties under the regulations. The norm of prosecutorial discretion, as vital in administrative as in criminal law, would make such a contention untenable. See *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967). Finally, Israel Aircraft does not pursue defendants under the APA, which governs the conduct of federal agencies but not of private persons subject to federal rules.

■ Because this suit against Sanwa is not authorized by the statute, by the regulations, or by the APA, Israel Aircraft asks us to imply—which is to say, invent—a private right of action for damages. Creating a private right of action in a field in which private actions under state law are routine, for example, securities fraud, is problematic enough. See *Virginia Bankshares, Inc. v. Sandberg,* —— U.S. ——, ——–——, 111 S.Ct. 2749, 2763–65, 115 L.Ed.2d 929 (1991). Creating such a right of action to *evade* principles (including an express preemption clause) that commit to official rather than private hands the decision whether to litigate would be unseemly. Express provisions for criminal prosecution and administrative enforcement, see 50 U.S.C.App. § 2410, without a corresponding provision for private enforcement, generally establish that private enforcement

is inappropriate. *Karahalios v. National Federation of Federal Employees,* 489 U.S. 527, 533, 109 S.Ct. 1282, 1287, 103 L.Ed.2d 539 (1989); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). See also *Statland v. American Airlines, Inc.,* 998 F.2d 539 (7th Cir.1993); *Spicer v. Chicago Board of Options Exchange, Inc.,* 977 F.2d 255 (7th Cir.1992). Federal courts exercise only those powers created by statute or the Constitution itself. Accordingly, we must use the traditional tools of statutory interpretation to determine whether § 8 creates the right of action Israel Aircraft seeks to pursue. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979); cf. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). What we have already said about the statute's language and structure covers most of the traditional instruments of statutory interpretation. Remaining clues do no better for Israel Aircraft.

Statutes creating private entitlements often come with private enforcement. *Cannon* said that a statute granting special rights to a defined class implies a corresponding right of private enforcement by that class. 441 U.S. at 689–90, 99 S.Ct. at 1953–54. See also *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). By contrast, a statute proscribing particular conduct but not identifying specific beneficiaries—for example, a statute forbidding murder or burglary—generally is enforced by public prosecutors, with private enforcement only if the statute creates an express right of action. *Cannon,* 441 U.S. at 690–91, 99 S.Ct. at 1954–55; *Karahalios,* 489 U.S. at 533–34, 109 S.Ct. at 1286–87. See also *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). Section 8 tells the President to establish certain regulations; it does not mention any particular class of beneficiaries. True enough, potential beneficiaries may be inferred, but that is equally true of laws proscribing murder and theft. No case during the last generation creates a private right of action to en-

force a statute cast in the form of a criminal prohibition; and § 8, which does not itself regulate private action but only calls for regulations to do so, is one step farther removed.

A look beneath the surface of this legislation reinforces the inferences from its text and structure. When Congress enacted the statute in 1977, it recognized that there would be no private enforcement. See S.Rep. No. 104, 95th Cong., 1st Sess. 22 (1977) ("The danger of unwarranted allegations in this highly sensitive area has prompted the committee to leave enforcement in the hands of the Executive Branch instead of creating a private right of action.") Many members of Congress were dissatisfied with that approach and proposed the authorization of private remedies; indeed, the House passed a bill providing for private suits with treble damages and attorneys' fees. H.R. 15377, 94th Cong., 2d Sess., § 6(g) (1976). These provisions were deleted when the anti-boycott provisions were added—much to the displeasure of some Members of the House, who continued sponsoring bills that would have established private actions. E.g., H.R. 11488, 94th Cong., 2d Sess. (1976) (Rep. Hutchinson); H.R. 418, 95th Cong., 1st Sess., § 246 (1977) (Rep. Holtzman). Early enforcement of the anti-boycott rules was unsatisfactory to Congress, which rewrote § 8 in 1979. See 93 Stat. 521 (1979). Again Congress considered, and did not enact, proposals to authorize private litigation. *Bulk Oil (Zug) A.G. v. Sun Co.*, 583 F.Supp. 1134 (S.D.N.Y.1983), affirmed without opinion, 742 F.2d 1431 (2d Cir.1984), describes these events. Several groups have filed a brief as *amici curiae* contending that enforcement by the Executive Branch remains deficient, but our view of the President's performance is irrelevant; this case depends on the statute Congress enacted (and the amendment it refused to enact) rather than on anyone's assessment of the way in which that statute has been implemented.

Notice that these amendments occurred *after* cases such as *Touche Ross* all but slammed the door on the creation of new private rights of action by the judicial branch. Instead of authorizing private remedies in the wake of the Supreme Court's decisions, Congress gave the Department of Commerce additional enforcement tools. In *Karahalios* the Supreme Court concluded that a single unsuccessful legislative effort to authorize private litigation demonstrated that no private action is appropriate. 489 U.S. at 533–34, 109 S.Ct. at 1286–87. The extended legislative consideration of private litigation to enforce § 8 of the Export Administration Act speaks even more loudly. Whatever implication § 11(i)(1) of the Act, 50 U.S.C.App. § 2410(i)(1), which provides that the express rights of action (all held by public officials) do not limit "other administrative or judicial remedies", may carry, does not overcome the considerations we have marshaled. Section 11(i)(1) is best understood as an assurance that by granting public prosecutors specified remedies under the Export Administration Act, Congress did not subtract remedies otherwise available; this section does not imply the existence of unenumerated rights to enforce the Export Administration Act itself.

The Senate Committee wrote of "[t]he danger of unwarranted allegations in this highly sensitive area". What makes the subject especially "sensitive" is that it concerns the foreign relations of the United States. Nations use boycotts and other forms of commercial pressure to achieve diplomatic and military ends. The United States uses the device frequently (at the moment, commerce with Cuba, Haiti, Iran, Iraq, Vietnam, and Yugoslavia is severely limited) and has no objection to the principle of international boycotts. Whether to recognize or instead to resist a boycott announced by some other nation—and what form any resistance will take—depends on the degree of friendliness between the United States and its target, and on the other options available to the United States. This nation recognizes not only that foreign nationals may be under pressure by their home governments to comply with boycotts we seek to break, but also that diplomatic overtures may be more successful than awards of damages in undermining unwelcome boycotts. Our case, a suit by an Israeli corporation against a Japanese bank to obtain damages on account of the bank's decision to respect a boycott by the Arab League, exposes some of the complica-

tions. Would the State Department find it as easy to enlist Japanese aid in bringing about harmony between the Palestinians and Israel—a subject on which mighty strides have been made while this case was in progress—if American courts were compelling Japanese firms and their subsidiaries to pay large sums? Whatever bargaining space the State Department enjoys could be curtailed by the presence of actors (judges and private litigants) beyond the influence of U.S. negotiators. No surprise, then, that Congress left implementation of § 8 to the President, who establishes the foreign policy of the United States. It would be imprudent for a court to create rights of action that might interfere with the conduct of foreign policy. See *Smith v. Reagan,* 844 F.2d 195 (4th Cir. 1988); cf. *McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 21–22, 83 S.Ct. 671, 677–78, 9 L.Ed.2d 547 (1963).

█ Israel Aircraft makes a claim under state law in addition to § 8. It contends that by refusing to advance credit to the joint venture, Sanwa tortiously interfered with its business opportunities—whether with Israel Aircraft's opportunity to deal with Quadrant, or the joint venture's ability to acquire Fairchild's assets, the complaint is not quite clear. See *Fishman v. Wirtz,* 807 F.2d 520, 546 (7th Cir.1986); *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33 (2d Dist.1989), describing the elements of the tort under Illinois law (which the parties agree applies). There is a serious jurisdictional problem, unremarked by the parties or the district court. A foreign corporation has sued another foreign corporation plus a domestic corporation, but the statute creating the diversity jurisdiction does not contemplate an alignment of alien versus citizen plus alien. See *Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.,* 10 F.3d 425, 427–28 (7th Cir.1993). The supplementary jurisdiction authorized by 28 U.S.C. § 1367, however, permits a district court, after dismissing the federal claim, to wrap up a suit whose state-law component is foreordained. See *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993). Plaintiff's tort claim is doomed, for the reasons the district court gave. (Defendants have not argued that § 8(c) preempts the state claim, so we address the merits while reserving all questions about preemption.)

Sanwa did not induce any third party to cease dealing with Israel Aircraft. It simply refused to lend any money to the joint venture. Israel Aircraft and Quadrant could have borrowed from any of a hundred other lenders and purchased Fairchild's assets in bankruptcy. Because the joint venture was unwilling to pay off Fairchild's loans in full (and apparently feared that it would not be the highest bidder at an auction in bankruptcy), it sought concessions from Sanwa, Fairchild's principal creditor. Sanwa balked. Israel Aircraft has not cited, and we could not find, any case holding a financial institution liable in tort for failing to make a concession that would have facilitated an extension of credit. By refusing to lend money, a bank does not "tortiously interfere" with the use the borrower would make of the funds. Other ways of characterizing Sanwa's conduct are possible but do not change the result under state law.

AFFIRMED.