NOTICE
Decision filed 11/04/22. The
text of this decision may be
changed or corrected prior to
the filing of a Petition for
Rehearing or the disposition of
the same.

2022 IL App (5th) 210210-U

NO. 5-21-0210

IN THE

NOTICE
This order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TRI-PLEX TECHNICAL SERVICES, LTD., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 20-L-237 |
| | ) | |
| JON-DON, LLC; LEGEND BRANDS, INC.; | ) | |
| CHEMICAL TECHNOLOGIES INTERNATIONAL, | ) | |
| INC.; BRIDGEPOINT SYSTEMS; GROOM | ) | |
| SOLUTIONS; and HYDRAMASTER, LLC., | ) | Honorable |
| | ) | Heinz M. Rudolf, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court erred in dismissing the second amended complaint with prejudice where the plaintiff alleged sufficient facts to state claims under the Illinois Consumer Fraud Act and the Uniform Deceptive Trade Practices Act, and for civil conspiracy. The judgment dismissing the second amended complaint with prejudice is reversed, and the cause is remanded for further proceedings.

¶ 2   The plaintiff, Tri-Plex Technical Services, Ltd., appeals from the trial court's

judgment, dismissing the plaintiff's claims against the defendants, Jon-Don, LLC,

1

Legend Brands, Inc., Chemical Technologies International, Inc., Bridgepoint Systems, Groom Solutions, and Hydramaster, LLC, with prejudice. We reverse and remand.

¶ 3                               I. BACKGROUND

¶ 4     The plaintiff is an Illinois corporation in the business of developing, manufacturing, distributing, and selling commercial grade carpet cleaning products to carpet care professionals in Illinois. The defendants are plaintiffs' competitors. They also manufacture, distribute, and/or sell commercial grade carpet cleaning products to carpet care professionals in Illinois.

¶ 5     On March 25, 2020, the plaintiff brought this action against the defendants, under the Consumer Fraud and Deceptive Business Practices Act (ICFA) (815 ILCS 505/1 *et seq.* (West 2020)) and the Uniform Deceptive Trade Practices Act (UDTPA)[1] (815 ILCS 510/1 *et seq.* (West 2020)). In the second amended complaint, at issue here, the plaintiff asserts that each defendant has engaged in unfair competition and unfair and deceptive trade practices with respect to the manufacture, distribution, and sale of its carpet cleaning products[2] in violation of the ICFA and the UDTPA.

¶ 6     In the general allegations pertaining to all counts of the complaint, the plaintiff initially noted that Illinois regulates the amount of phosphorous and volatile organic materials (VOMs) in cleaning products because phosphorous and VOMs are harmful to the environment and human health. The Regulation of Phosphorous in Detergents Act

---

[1]The abbreviations "ICFA" and "UDTPA" were used in the parties' pleadings and the trial court's order. We retained those abbreviations in this order for consistency.

[2]The various carpet cleaning products that were manufactured, distributed, and/or sold by the defendants to Illinois consumers were specifically identified by their brand names in the second amended complaint. In addressing the issues raised in this appeal, we need only identify these products collectively.

(Detergents Act) provides that "no person may use, sell, manufacture, or distribute for sale any cleaning agent containing more than 0.5% phosphorous by weight, expressed as elemental phosphorous, in Illinois, except as otherwise provided in this Section." 415 ILCS 92/5(a) (West 2020). Additionally, the Illinois Environmental Protection Agency (Illinois EPA) limits the amount of VOMs used in dilutable carpet cleaners to 0.1% or less by weight (35 Ill. Adm. Code 223.205(a)(17)(B) (2012)). The plaintiff claimed that its cleaning products comply with Illinois laws and regulations, while the defendants' cleaning products do not. The plaintiff alleged that the defendants' products contain more than 0.5% phosphorous by weight and do not fall within any of the exceptions enumerated in the Detergents Acts. It further alleged that the products manufactured, distributed, and/or sold by Don-Joy products and Legend Brands contain more than 0.1% VOMs by weight and do not fall within any exceptions set out in the Illinois EPA regulations.

¶ 7    According to the more specific allegations under the UDTPA, each defendant omitted from its labeling, and otherwise failed to notify consumers in the marketplace, that its cleaning products contain more than 0.5% phosphorous by weight and do not comply with the Detergents Act. In addition, defendants Jon-Don and Legend Brands omitted from their labeling and otherwise failed to notify consumers that their cleaning products contain more than 0.1% VOMs by weight and do not comply with Illinois EPA regulations limiting VOMs. The plaintiff further alleged that consumers in the marketplace purchased the defendants' products and refused to purchase plaintiff's products because the defendants' phosphorus-laden products and VOM-laden products

3

clean better. These consumers were unaware that products containing excessive amounts of phosphorous and VOMs could not be legally sold in Illinois. They assumed that the defendants' cleaning products complied with Illinois law because they were able to purchase them in Illinois. They would be surprised to learn that the approval, uses, and quality of the cleaning products were not as represented. The plaintiff asserted that the defendants' deceptive acts caused a likelihood of confusion and misunderstanding in the marketplace as to "the sponsorship, approval, characteristics, ingredients, uses, benefits, or certification" of the subject products, and constituted deceptive practices under subsections 2(a)(2), (5), and (12) of the UDTPA (815 ILCS 510/2(a)(2), (5), (12) (West 2020)).

¶ 8    The plaintiff alleged that the defendants' deceptive practices created and continued to create unfair competition in the marketplace. The plaintiff further alleged that the defendants willfully engaged in these practices. The plaintiff asserted that as a direct result of the defendants' practices, it "suffered and continues to suffer a loss of ability to compete in the marketplace and a loss of sales." The plaintiff sought a finding that each defendant willfully engaged in deceptive trade practices, an order enjoining each defendant from distributing or selling the subject products in Illinois, and an award of reasonable attorney fees and costs.

¶ 9    In the specific allegations under the ICFA, the plaintiff initially incorporated all of the preceding allegations. According to the allegations, each defendant employed "deception, fraud, and false pretenses" to conceal the fact that its products contained excessive quantities of phosphorous and/or VOMs, and did not comply with Illinois laws.

4

Each defendant committed these acts with the intent that unwary consumers rely upon the misrepresentations and purchase its products. The misrepresentations were material because they concerned the type of information upon which a reasonable consumer would be expected to rely in making purchasing decisions. The plaintiff further alleged the defendants knowingly and willfully misled consumers into purchasing the subject products, and charged a premium for the products, as if those products were legal and of a superior quality. The plaintiff also alleged that the practices exposed consumers to unwanted, harmful, and illegal levels of phosphorous and VOMs.

¶ 10    The plaintiff asserted that the defendants' acts constituted unfair methods of competition and unfair and deceptive acts or practices. In addition, the defendants' unfair practices offended Illinois public policy because the subject products did not comply with Illinois environmental laws, and because Illinois consumers have an interest in purchasing products that do not harm the environment. These practices also offended the public's expectation that it would be told the truth about products sold in the marketplace.

¶ 11    The plaintiff claimed that the defendants acted willfully and with the intent to economically harm the plaintiff; that the defendants profited by selling illegal products to unwary consumers in Illinois, at the expense of the plaintiff and consumers alike; and that the plaintiff was and is unable to fairly compete in the markets where the subject products are sold. The plaintiff requested a finding that each defendant willfully violated the ICFA, and an order enjoining each defendant from distributing or selling the subject products in Illinois. The plaintiff also requested actual damages; punitive damages for

willful violations of Illinois law that negatively impacted competition, the environment, and consumer health and safety; and reasonable attorney fees and costs.

¶ 12 In the sole count for civil conspiracy, the plaintiff incorporated all of its preceding factual allegations. The plaintiff then alleged that Jon-Don and Legend Brands, acting in concert, intentionally and knowingly marketed, distributed, sold, and/or delivered illegal Legend Brands' phosphorous-laden and VOM-laden products to unwary customers in Illinois in open violation of Illinois environmental laws. The plaintiff further alleged that these defendants conspired to rebrand and sell certain Legend Brands products as Jon-Don products to Illinois customers in open violation of Illinois environmental laws. The plaintiff claimed that Jon-Don and Legend Brands engaged in a civil conspiracy to deprive the plaintiff of sales and profits, and that it suffered and continues to suffer a significant loss of sales and profits as a result of this conspiracy. The plaintiff requested a finding that Jon-Don and Legend Brands engaged in a civil conspiracy, and a judgment awarding the plaintiff an amount to be determined at trial, equal to its lost profits, incidental and consequential damages, punitive damages, and reasonable attorney fees and costs.

¶ 13 The defendants filed separate motions to dismiss the second amended complaint. They also adopted the arguments made in their codefendants' motions. The defendants moved to dismiss the complaint for failure to state a cause of action under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). They also sought dismissal under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)),

6

asserting that the plaintiff lacked standing under the ICFA, and that other affirmative matters barred the plaintiff's claims.

¶ 14   On May 6, 2021, the trial court heard arguments on the defendants' motions and took the matter under advisement. On June 8, 2021, the court dismissed all counts in the second amended complaint with prejudice. In its order, the court noted the pending motions included overlapping arguments and some unique arguments. The court addressed all of the arguments collectively because each defendant adopted the arguments of its codefendants.

¶ 15   Initially, the trial court found that the alleged violations of environmental statutes and regulations could not form the basis for claims under the ICFA and the UDTPA. The court reasoned that the Illinois Pollution Control Board has the exclusive authority to enforce the provisions of the Detergents Act and environmental laws and regulations governing emissions, and that the plaintiff could not use its UDTPA and ICFA claims as a means to enforce those laws and regulations.

¶ 16   The trial court also found that those claims that were based upon a failure to adequately label the subject products were barred "due to compliance with federal regulations." The court found that the content of a product label "falls within the scope of the federal regulations requiring the disclosure of certain information, including the presence of hazardous chemicals," citing 29 C.F.R. § 1910.1200(a)(1). The court concluded that the plaintiff did not "plausibly allege" that the defendants' product labels were not in compliance with that regulation, or identify any other law or regulation that

7

would require the defendants to notify consumers of their noncompliance with the Detergents Act or Illinois's emission standards.

¶ 17    Next, the trial court found that the plaintiff had failed to adequately allege facts that established a "likelihood of confusion" under the UDPTA. Applying the meaning of "likelihood of confusion," as used in trademark infringement cases, the court stated that a "likelihood of confusion" only existed when a defendant's use of a deceptive trade name, trademark, or other distinctive symbol was likely to confuse or mislead consumers "as to the source or origin of the product or service." The court concluded that the plaintiff did not allege the type of marketplace confusion prohibited by the UDPTA.

¶ 18    Turning to the ICFA claims, the trial court found that the plaintiff failed to establish standing because it was not a consumer and could not satisfy the "consumer nexus" test. The court also found that the ICFA claims were deficient because the plaintiff alleged an omission of law, rather than an omission of fact, and because the plaintiff did not adequately allege that it suffered damages proximately caused by the defendants' conduct.

¶ 19    Finally, the court concluded that the civil conspiracy claim failed as a matter of law. The court found that the conspiracy claim was dependent on the existence of a viable cause of action under the ICFA or the UDTPA, and that the plaintiff failed to state a cause of action under either statute.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, the plaintiff claims that the trial court erred in dismissing its second amended complaint with prejudice. The trial court set forth five main grounds for dismissal, and the plaintiff challenges each one.

¶ 22    A motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) challenges the legal sufficiency of the complaint based upon defects apparent on the face of the complaint. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). When ruling on a section 2-615 motion to dismiss, the court will consider whether the allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a claim upon which relief can be granted. *Marshall*, 222 Ill. 2d at 429. All well-pleaded facts are taken as true, and all reasonable inferences are drawn in favor of the nonmoving party. *Marshall*, 222 Ill. 2d at 429. A complaint should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to relief. *Marshall*, 222 Ill. 2d at 429. An order granting a 2-615 motion is reviewed *de novo*. *Marshall*, 222 Ill. 2d at 429.

¶ 23    A motion to dismiss under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)) admits the legal sufficiency of the complaint, accepts all well-pleaded facts as true, and asserts that an affirmative matter outside the complaint bars or defeats the plaintiff's claim. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31. A 2-619 motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Reynolds*, 2013 IL App (4th) 120139, ¶ 31. Lack of standing is an "affirmative matter" that is properly raised in a motion to dismiss under

section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2020)). *Reynolds*, 2013 IL App (4th) 120139, ¶ 33. The propriety of an order dismissing an action based on a lack of standing presents a question of law that is reviewed *de novo*. *Reynolds*, 2013 IL App (4th) 120139, ¶ 31.

¶ 24                    *Claims Premised on Violations of Environmental Law*

¶ 25    In its order, the trial court found that the alleged violations of the Detergents Act and the environmental regulations governing emissions could not form the bases for claims under the ICFA and the UDTPA.[3] The court reasoned that the Illinois Pollution Control Board has the exclusive authority to enforce those environmental laws and regulations, and that the plaintiff could not use the ICFA and UDTPA as a means to enforce those laws and regulations.

¶ 26    The regulation of phosphorous in detergents is an exclusive power of the State of Illinois. 415 ILCS 92/5(f) (West 2020). The Illinois Pollution Control Board has been authorized to promulgate rules for the administration, regulation, and enforcement of the Detergents Act (415 ILCS 92/5(e), (f) (West 2020)), and to implement other environmental control standards for Illinois (415 ILCS 5/5 (West 2020)).

---

[3]In considering this matter, the trial court found that *Manzo v. Uber Technologies, Inc.*, 2014 WL 3495401 (N.D. Ill. July 14, 2014), an unpublished decision cited by the defendants, was instructive. In *Manzo*, the federal district court found that that the alleged deception hinged on the anticipated interpretation of an ambiguous regulation. The federal court determined that the plaintiff could not state a cause of action based upon the plaintiff's preferred interpretation of the regulation where the regulatory framework was ambiguous with regard to the defendant's activity. In contrast, federal courts have allowed unfair competition claims based upon violations of unambiguous statutes and regulations. See, *e.g.*, *Malden Transportation, Inc. v. Uber Technologies, Inc.*, 286 F. Supp. 3d 264, 278 (D. Mass. 2017). As distinguished from *Manzo*, the unfair competition claims in this case do not involve alleged violations of ambiguous statutes or regulations.

¶ 27    In this case, the plaintiff did not bring suit under the Detergents Act or any other environmental laws or regulations. Rather, the plaintiff invoked those laws and regulations as evidence to support its claims of unfair competition and unfair practices. See *Gainer Bank, N.A. v. Jenkins*, 284 Ill. App. 3d 500, 503 (1996). A plaintiff may establish an unfairness claim by showing that the defendants' deceptive practices offend public policy. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002). A practice may offend public policy if it violates a standard of conduct set forth in an existing statute or common law doctrine that typically applies to such a situation. See, *e.g.*, *Robinson*, 201 Ill. 2d at 417-18; *Elder v. Coronet Insurance Co.*, 201 Ill. App. 3d 733, 743 (1990).

¶ 28    In the second amended complaint, the plaintiff alleged that the defendants engaged in unfair or deceptive practices under the ICFA, and unfair competition under the UDPTA by manufacturing, distributing, and selling cleaning products that did not comply with Illinois environmental laws, without notifying unwary consumers about the excessive quantities of phosphorous and/or VOMs in those products, and the restrictions on use of those products in Illinois. The plaintiff also alleged that the defendants intentionally mispresented the approvals, permitted uses, and qualities of those products with the intent to profit at the expense of the plaintiff and Illinois consumers. The unfair and deceptive practices that the plaintiff sought to remedy through its ICFA and UDTPA claims were separate and distinct from the regulatory decisions and enforcement actions of the Pollution Control Board. We do not agree that the plaintiff used the ICFA and UDTPA as a means to bring a private right of action to enforce the Detergents Act or

11

environmental laws governing emissions. Rather, these statutes and regulations simply offer a quantum of proof regarding the deceptive actions. Therefore, this was not a proper ground for dismissal.

¶ 29                    *Deceptive Practices & OSHA Regulations*

¶ 30    Next, the trial court determined that plaintiff's claims based on a failure to adequately label the subject products were barred "due to compliance with federal regulations." The court stated that compliance with federal regulations was a complete defense to a consumer fraud claim based on the alleged failure to make additional disclosures related to a product. The court found that the content of a product label "falls within the scope of the federal regulations requiring the disclosure of certain information, including the presence of hazardous chemicals," citing 29 C.F.R. § 1910.1200(a)(1), and that the plaintiff did not "plausibly allege" that defendants' product labels did not comply with that regulation. The court concluded that the product labeling allegations fell within the exemptions in the UDTPA and ICFA.

¶ 31    Section 4 of the UDTPA provides that the Act does not apply to "conduct in compliance with the orders or rules of or a statute administered by a Federal, state or local governmental agency." 815 ILCS 510/4(a) (West 2020). Similarly, the ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 2020). To trigger these exemptions, a regulatory body must be acting within its statutory authority and the challenged conduct must be "specifically authorized" by that regulatory body. *Price v. Philip Morris, Inc.*, 219 Ill. 2d

182, 247-49 (2005); *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994) (mere compliance with applicable federal regulations is not necessarily a shield against liability under the ICFA).

¶ 32    In the second amended complaint, the plaintiff specifically alleged that each defendant "omits from its labeling, and otherwise fails to notify" consumers that its products contain excessive amounts of phosphorous and/or VOMs. The plaintiff further alleged that consumers purchased the subject products, unaware that those products did not comply with environmental laws and regulations and were potentially harmful to the environment and human health. In its order, the trial court did not discuss the plaintiff's allegations regarding the overall failure to notify consumers about the subject products' ingredients, restrictions on use, and potential harm to the environment and human health. The trial court limited its consideration to the "omits from its labeling" portion of the allegation, and found that the labeling allegation was barred due to compliance with 29 C.F.R. § 1910.1200.

¶ 33    At the outset, we note that the subject product labels were not attached or incorporated into the second amended complaint. In addition, the labels were not attached in support of defendants' arguments that their labeling complied with 29 C.F.R. § 1910.1200. Neither the labels themselves, nor the specific content of the labels, were before the trial court as it considered the motions to dismiss. Grounds for dismissal that do not appear on the face of the pleadings should be supported by affidavit or other documentary evidence. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485-86 (1994). A motion to dismiss is legally insufficient when extrinsic facts crucial to the motion are

13

not supported by affidavit or other documentary evidence. *Becker v. Zellner*, 292 Ill. App. 3d 116, 124 (1997). Whether the subject product labels were covered by, and/or complied with, 29 C.F.R. § 1910.1200, or another federal regulation, cannot be discerned from the pleadings. Likewise, whether the labels adequately informed consumers or users of the products' ingredients, qualities, and restrictions on use cannot be determined from the pleadings. Thus, the trial court's findings of compliance are not supported by the record.

¶ 34    In addition, we note that section 1910.1200 contains workplace safety regulations[4] implemented under the Occupational Safety and Health Act (OSHA). See 29 U.S.C. § 651(b); 29 C.F.R. § 1910.1200 (2020). Congress enacted OSHA to assure so far as possible that every worker has "safe and healthful working conditions." 29 U.S.C. § 651(b). Congress included a "savings clause" that demonstrates a clear intent to preserve and not preempt state tort law. See 29 U.S.C. § 653(b)(4); *In re Welding Fume Product Liability Litigation*, 364 F. Supp. 2d 669, 688-89 (2005); *Wickham v. American Tokyo Kasei, Inc.*, 927 F. Supp. 293 (1996); *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 54 (1st Cir. 1991). Section 1910.1200 contains a preemptive provision.[5] 29 C.F.R. § 1910.1200(a)(2). This provision has been construed to preempt state tort law only when

---

[4]Each employer has a duty to furnish to his employees "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees," and a duty to comply with OSHA standards, rules, regulations, and orders. 29 U.S.C. § 654(a).

[5]The HazCom Standard contains a provision indicating that it is "intended to address comprehensively the issue of classifying the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, and to preempt any legislative or regulatory enactments of a state, or political subdivision of a state, pertaining to this subject." 29 C.F.R. § 1910.1200(a)(2).

a state's tort law directly, clearly, and substantially conflicts with federal law. *Welding Fume Product Liability Litigation*, 364 F. Supp. 2d at 692.

¶ 35   Section 1910.1200 is commonly called the "HazCom Standard." The stated purpose of the HazCom Standard is to "ensure that the hazards of all chemicals produced or imported are classified, and that information concerning the classified hazards is transmitted to all employers and employees by means of safety data sheets or labels." 29 C.F.R. § 1910.1200(a)(1). Containers holding hazardous chemicals must be labeled, tagged, and marked with "appropriate hazard warnings." 29 C.F.R. § 1910.1200(f)(1), (5). The HazCom Standard requires that labels include a product identifier, signal words, hazard statement, pictograms, precautions statements, and contact information for the chemical manufacturer, importer, or other responsible party (29 C.F.R. § 1910.1200(f)(1)), but it does not mandate a specific label, prescribe specific content or wording, or define what makes a hazard warning "appropriate." Furthermore, these labeling requirements do not apply to all chemicals and hazardous waste substances. See 29 C.F.R. § 1910.1200(b)(5), (6).

¶ 36   The HazCom Standard pertains to regulations governing employers and employees in the workplace, and "does not reach broadly to include common law duties to warn owed by manufacturers and suppliers to end users of their products." *Welding Fume Product Liability Litigation*, 364 F. Supp. 2d at 692-93 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 488-89 (1996)). The plaintiff's unfair and deceptive practice claims do not pertain to workplace safety. Additionally, these claims are directed at the manufacturers, distributors, and suppliers of the subject products, not employers. The

15

alleged deception involves the failure to notify consumers that the defendants' products contain excessive amounts of phosphorous and VOMs; that there are limits on the approved uses of the products; and that the products could be harmful to the environment and human health. Even if the subject product labeling is found to comply with an applicable federal regulation, consumers may nonetheless be deceived about the quality and safety of the products. See *Martin*, 163 Ill. 2d at 50-52 (customers may be deceived about material facts despite receiving information required by an agency's regulations).

¶ 37 Bare assertions that a product label complies with a federal regulation are insufficient to support a motion to dismiss. A defendant must provide legal arguments and supporting documentation so that the trial court can determine whether the federal regulation applies to a particular claim, and whether compliance with that regulation provides a complete defense to the claim. In this case, the defendants have not established that section 1910.1200 would trigger the exemptions in the UDPTA and/or the ICFA. Accordingly, it was error to dismiss the second amended complaint on that basis.

¶ 38                                    *The ICFA Claims*

¶ 39 The trial court also determined that the plaintiff failed to plead actionable claims under the ICFA. The court found that the plaintiff did not establish standing to pursue its claims. The court also found that the ICFA claims were deficient because the plaintiff alleged an omission of law, rather than an omission of fact, and because the plaintiff did not adequately allege that it suffered damages proximately caused by the unfair or deceptive practices.

16

¶ 40    The ICFA is a regulatory and remedial statute intended to protect consumers, borrowers, and businesspersons from fraud, unfair methods of competition, and other unfair and deceptive acts or practices in the conduct of trade or commerce, and it is to be liberally construed to effectuate its purpose. *Robinson*, 201 Ill. 2d at 416-17. To state a claim under the ICFA, a plaintiff must allege that (1) the defendant committed a deceptive act or practice, (2) the defendant intended the plaintiff to rely on the deception, and (3) the deception occurred during a course of conduct involving trade or commerce. *Robinson*, 201 Ill. 2d at 417. The plaintiff's actual reliance is not an element of statutory fraud, but the plaintiff must show that the consumer fraud proximately caused the plaintiff's injury. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). A complaint for statutory consumer fraud violation must be alleged with the same particularity and specificity as required under common law fraud. *Connick*, 174 Ill. 2d at 501. To bring an action for civil damages under the ICFA, the plaintiff must prove that it suffered actual damages. 815 ILCS 505/10a(a) (West 2020); *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283 (2006).

¶ 41    Section 2 of the ICFA provides:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or

17

commerce[6] are hereby declared unlawful whether any person has in fact been misled, deceived or deceived or damaged thereby." 815 ILCS 505/2 (West 2020).

¶ 42    The protections of the ICFA are not limited to consumers. That is made clear by the full title of the Act, "An Act to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ***." (Emphasis omitted and internal quotation marks omitted.) *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 214 Ill. App. 3d 1073, 1082 (1991). There is "a clear mandate from the Illinois legislature that [Illinois] courts *** utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties." (Internal quotation marks omitted.) *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534 (1989). Thus, aggrieved businesses have standing to sue under the ICFA. *Sullivan's Wholesale Drug Co.*, 214 Ill. App. 3d at 1083; *Wigglesworth Imports*, 190 Ill. App. 3d at 534.

¶ 43    The plaintiff readily admits it is not a consumer of the defendants' products. The question is whether the plaintiff has alleged sufficient facts to establish standing under the "consumer nexus" test.

¶ 44    When a dispute involves two businesses who are not consumers of each other's products or services, the test for standing is whether the deceptive conduct involves trade

---

[6]The terms "trade" and "commerce" mean "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f) (West 2020).

18

practices addressed to the market generally or otherwise implicates consumer protection concerns. See *Empire Home Services, Inc. v. Carpet America, Inc.*, 274 Ill. App. 3d 666, 669 (1995); *Wigglesworth Imports*, 190 Ill. App. 3d at 534. To sufficiently establish an implication of consumer protection concerns, plaintiffs must plead and otherwise prove the following: "(1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations *** concerned consumers other than themselves; (3) how defendant's particular breach *** involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 160 (1998).

¶ 45   Here, the plaintiff alleged that the defendants directed their deceptive practices toward consumers. The defendants allegedly deceived consumers about the ingredients, approved uses, and quality of defendants' cleaning products, and the harmful impact of those products on the environment and human health. The plaintiff further alleged that the defendants knowingly and willfully charged a premium for their products, as if those products were legal and of a superior quality; and that the defendants profited from the sale of illegal products to unwary Illinois consumers. The plaintiff also asserted that the defendants' practices created an anticompetitive effect on the plaintiff's ability to place safe and compliant products into the marketplace and to compete there. Taking these allegations and all reasonable inferences therefrom as true, we find that the alleged conduct sufficiently implicates consumer protection concerns to establish standing. Thus, the trial court erred in dismissing the plaintiff's ICFA claims based on a lack of standing.

19

¶ 46    The trial court next found that the plaintiff failed to adequately allege a deceptive statement or omission under the ICFA. Initially, the court pointed to the plaintiff's allegation that the defendants deceptively omitted to inform customers that their products were "illegal *per se*" because they contained excessive phosphorous. The court found that this allegation was legally incorrect in many circumstances because the Detergents Act contains several exceptions to the 0.5% limit on phosphorous in detergents, including exceptions for cleaning products used in health care facilities, nursing homes, commercial bathrooms, and veterinary facilities.

¶ 47    Under the Detergents Act, "no person may use, sell, manufacture, or distribute for sale any cleaning agent containing more than 0.5% phosphorous by weight, *** except as otherwise provided in this Section." 415 ILCS 92/5(a) (West 2020). There are limited exceptions. For example, cleaning agents containing more than 0.5% phosphorous may be used in hospitals, clinics, nursing homes, and veterinary hospitals. 415 ILCS 92/5(b) (West 2020). The plaintiff has conceded that the "illegal *per se*" language is imprecise, acknowledging that when it alleged the subject products were "illegal *per se*," it meant that Illinois bans them "for general sale and use." Viewing this specific allegation in isolation, we agree that it is not accurate. Upon proper motion, the *per se* language in the allegation may be stricken from the second amended complaint, or excised and corrected. The inaccurate allegation, however, is not a proper basis for dismissing the ICFA claims in their entirety. Considered as a whole, the ICFA claims are premised upon the defendants' failure to disclose the ingredients, quality, restrictions on uses of their

20

products, and the defendants' actions in misleading consumers into purchasing their products, while charging a premium as if the products were of superior quality.

¶ 48 The trial court also found that the ICFA claims were deficient because the plaintiff alleged an omission of law, rather than an omission of fact. Generally, a deceptive representation of law does not constitute a violation of the ICFA because both parties are presumed to be equally capable of knowing and interpreting the law. See generally *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 933 (2003); *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805 (1993). The test is whether the misrepresentation could have been discovered by merely reviewing the applicable law. *Capiccioni*, 339 Ill. App. 3d at 934.

¶ 49 Here, the plaintiff alleged that the defendants engaged in unfair and deceptive practices in that defendants failed to notify consumers that the subject products contained quantities of phosphorous and/or VOMs in excess of the amounts permitted under Illinois law; that they had restricted uses; and that they posed potential harm to human health and the environment. These are misrepresentations or omissions of fact that concern the specific ingredients, qualities, and uses of the subject products. In addition, on this record, we cannot conclude that consumers might have learned whether they could safely and lawfully use these products by reviewing provisions of the Detergents Act.

¶ 50 The plaintiff also argues that the trial court failed to consider its allegations under the unfairness prong of its ICFA claim. The statute affords redress not only for deceptive business practices, but also for business practices that, though not deceptive, are unfair. *Robinson*, 201 Ill. 2d at 417. Factors to be considered when determining whether a course

21

of conduct or an act is unfair are "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson*, 201 Ill. 2d at 418 (citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). All three criteria do not need to be satisfied to support a finding of unfairness, as a practice may be unfair because of the degree to which it meets one of the factors or because it meets all three to a lesser extent. *Robinson*, 201 Ill. 2d at 418.

¶ 51 The plaintiff adequately alleged that the defendants have engaged in conduct that offends the public policies underlying the Detergents Act, and other Illinois environmental laws. The plaintiff also alleged substantial injury to consumers in that the defendants knowingly and willfully charged a premium for their products, as if they were legal and of a superior quality, and thus, profited at the expense of unwary consumers. Additionally, the plaintiff alleged that defendants' conduct posed substantial harm to human health and the environment. Thus, we find that the plaintiff sufficiently alleged a claim for unfair business practices under the ICFA. *Robinson*, 201 Ill. 2d at 417-18.

¶ 52 The trial court also found that the plaintiff failed to adequately allege proximate cause. Proximate cause means any cause which, in nature or probable sequence, produced the alleged injury. *Capiccioni*, 339 Ill. App. 3d at 937. Proximate cause is a question of fact for the trier of fact. *Sullivan's Wholesale Drug Co.*, 214 Ill. App. 3d at 1086. Our supreme court has said that the required allegation of proximate harm is "minimal" because that determination is best left to the trier of fact. *Connick*, 174 Ill. 2d at 504. Here, the plaintiff alleged the defendants knowingly and willfully misled consumers into

22

purchasing their products, and knowingly and willfully charged a premium as if their products were of superior quality. Potential customers allegedly refused to purchase the plaintiff's phosphorous-free products because the defendants' phosphorous-laden products cleaned better than plaintiff's products. The plaintiff alleged that the defendants acted willfully and intentionally, with the intent to economically harm the plaintiff, and further, that as a direct and proximate result of the defendants' acts, the plaintiffs were unable to compete in the marketplace. The plaintiff also alleged that the defendants profited from the sale of their products, and that the plaintiff suffered and continues to suffer a loss of the ability to compete in the marketplace and a loss of sales caused by the defendants' deceptive trade practices. The plaintiff has adequately alleged injuries proximately caused by the defendants' deceptive practices.

¶ 53    Taking the allegations under the ICFA as true, and viewing them in a light most favorable to the plaintiff, for purposes of the section 2-615 motions to dismiss, we do not find them to be so non-specific or speculative as to require dismissal. Whether the plaintiff can present evidence to support its allegations is for another day. At this stage of the litigation, we find that the plaintiff's complaint contains sufficient allegations under the ICFA to survive the defendants' motions to dismiss.

¶ 54                                  *The UDTPA Claims*

¶ 55    The trial court also found that the plaintiff failed to plead actionable claims under the UDTPA. Applying "likelihood of confusion," as defined in trademark infringement cases, the court concluded that the plaintiff failed to adequately allege the type of marketplace confusion among products and services that is actionable under the UDTPA.

23

¶ 56 The UDTPA provides consumers and business competitors with a means to address and remedy a company's deceptive trade practices, but limits the relief available. 815 ILCS 510/3 (West 2020); *Empire Home Services, Inc. v. Carpet America, Inc.*, 274 Ill. App. 3d 666, 670 (1995); *Zinser v. Rose*, 245 Ill. App. 3d 881, 889 (1993). The purpose of the UDTPA is "to prohibit unfair competition." *Phillips v. Cox*, 261 Ill. App. 3d 78, 81 (1994). It is primarily directed toward acts that "unreasonably interfere with another's conduct of his business." (Internal quotation marks omitted.) *Phillips*, 261 Ill. App. 3d at 81. Under the UDTPA, business competitors have standing to file suit and enjoin deceptive business practices of a rival company. *Zinser*, 245 Ill. App. 3d at 889.

¶ 57 Section 2 of the UDTPA provides in pertinent part:

"(a) A person engages in a deceptive trade practice when, in the court of his or her business, vocation, or occupation, the person:

\* \* \*

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

\*\*\*

(7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

\* \* \*

24

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

(b) In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding." 815 ILCS 510/2 (West 2020).

¶ 58 In this case, the trial court incorrectly concluded that a "likelihood of confusion" under the UDTPA was limited to cases in which a defendant's use of a trade name, trademark, or other distinctive symbol was likely to confuse or mislead consumers as to the source or origin of the product. " 'Unfair competition is a broader concept than trademark infringement and depends upon likelihood of confusion as to the source of plaintiff's goods when the whole product, rather than just the service mark, is considered.' " *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 865 (2008) (quoting *Thompson v. Spring-Green Lawn Care Corp.*, 126 Ill. App. 3d 99, 113 (1984)); *Empire Home Services*, 274 Ill. App. 3d at 670. Any conduct that creates a likelihood of consumer confusion or misunderstanding is potentially actionable under subsection 2(a)(12). *Phillips*, 261 Ill. App. 3d at 81-82.

¶ 59 The plaintiff alleged that the defendants represented their cleaning products to have approvals, uses, and qualities that they did not have. The defendants also allegedly failed to disclose that their products contained excessive quantities of phosphorous and VOMs, and as such, did not comply with Illinois environmental laws and regulations. The plaintiff further alleged that unwary consumers in the marketplace believed that the defendants' products were legal and complied with Illinois law because those products

25

were offered for sale alongside the plaintiff's compliant products. Those consumers, confused by the defendants' misrepresentations, purchased defendants' cleaning products (and refused to purchase the plaintiff's cleaning products) because they were led to believe that the defendants' products were safe and of superior quality. The allegations fit within the deceptive acts set forth in section 2(a) of the UDTPA (815 ILCS 510/2(a) (West 2020)). Taking the allegations and the reasonable inferences therefrom as true, and viewing them in a light most favorable to the plaintiff, we find that the plaintiff alleged sufficient facts to show a likelihood of marketplace confusion that is actionable under the UDTPA.

¶ 60    Some of the defendants contend that the plaintiff failed to allege sufficient facts to establish willful violations of the UDTPA to support its prayer for attorney fees, and they ask this court to strike that claim. Section 3 of the UDTPA provides that costs and reasonable attorney fees may also be awarded, but only if the court finds that the defendant "willfully engaged" in a deceptive practice. 815 ILCS 510/3 (West 2020). After reviewing the second amended complaint, we find that the plaintiff adequately alleged willful violations sufficient to support a prayer for attorney fees under section 3 of the UDTPA. Whether the plaintiff can present sufficient evidence to prove its claims is not before us.

¶ 61                         *Civil Conspiracy*

¶ 62    Finally, the trial court found that the plaintiff's civil conspiracy claim failed as a matter of law. The court reasoned that civil conspiracy is not an independent tort, and that there must be an independent cause of action underlying a plaintiff's conspiracy claim.

26

The court concluded that the conspiracy count was dependent on the existence of violations of the ICFA or the UDTPA, and that the plaintiff failed to plead sufficient facts to state a cause of action under either theory. Here, we have determined that the plaintiff adequately asserted claims under the ICFA and the UDTPA, and therefore the plaintiff's claim for civil conspiracy also survives defendants' 2-615 motions to dismiss.

¶ 63                                    III. CONCLUSION

¶ 64    Although the plaintiff's second amended complaint is not a model pleading, it is not so lacking in relevant factual allegations as to warrant a dismissal on the pleadings. Upon proper motion by any party, inaccurate and surplus allegations can be stricken. As we noted early on, the granting of a motion to dismiss for failure to state of cause of action should be affirmed when no set of facts can be proved that will entitle the plaintiff to relief. Taking the allegations and reasonable inferences as true, and viewing them in a light most favorable to the plaintiff, we find that the plaintiff has alleged sufficient facts to state claims under the ICFA, the UDTPA, and for civil conspiracy. Accordingly, the trial court's judgment dismissing the plaintiff's second amended complaint with prejudice is reversed, and the cause is remanded for further proceedings.


¶ 65    Reversed and remanded.