# Illinois Official Reports

## Supreme Court

---

**_Tri-Plex Technical Services, Ltd. v. Jon-Don, LLC_, 2024 IL 129183**

---

| | |
|---|---|
| Caption in Supreme Court: | TRI-PLEX TECHNICAL SERVICES, LTD., Appellee, v. JON-DON, LLC, *et al.*, Appellants. |
| Docket No. | 129183 |
| Filed | May 23, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of St. Clair County, the Hon. Heinz M. Rudolf, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Rubén Castillo, Joel D. Bertocchi, and Ildefonso P. Mas, of Akerman LLP, and Gregory T. Fouts, of Morgan, Lewis & Bockius LLP, both of Chicago, Charles A. Pierce, of Pierce Law Firm, P.C., Melissa C. Meirink and Patrick B. Mathis, of Mathis, Marifian & Richter, Ltd., and Daniel Hasenstab, of Brown & James, P.C., all of Belleville, Donald M. Flack, of Armstrong Teasdale LLP, of Edwardsville, and Alexander B. Reich, of Kalish Law Firm LLC, of Cleveland, Ohio, for appellants.<br><br>David C. Nelson, of Nelson & Nelson, P.C., of Belleville, and Matthew H. Armstrong, of Armstrong Law Firm LLC, and Robert L. King, both of St. Louis, Missouri, for appellee. |

Dominic C. LoVerde, of Power Rogers, LLP, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Justices
JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1 The plaintiff, Tri-Plex Technical Services, Ltd., filed a complaint in the circuit court of St. Clair County against the defendants, Jon-Don, LLC; Legend Brands, Inc.; Chemical Technologies International, Inc.; Bridgepoint Systems; Groom Solutions; and Hydramaster, LLC, alleging violations of the Illinois Uniform Deceptive Trade Practices Act (Deceptive Trade Practices Act) (815 ILCS 510/1 *et seq.* (West 2020)) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2020)). The circuit court dismissed the plaintiff's complaint with prejudice on numerous grounds, including that the plaintiff failed to allege sufficient facts to state a claim and that the plaintiff lacked standing. The appellate court reversed the judgment of the circuit court and remanded the case for further proceedings. 2022 IL App (5th) 210210-U. For the following reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court dismissing the plaintiff's complaint.

¶ 2 BACKGROUND

¶ 3 The plaintiff is an Illinois corporation that develops, manufactures, distributes, and sells commercial-grade carpet cleaning products to carpet cleaning companies. The defendants are the plaintiff's competitors and are companies that also either develop, manufacture, distribute, and/or sell commercial-grade carpet cleaning products in Illinois.

¶ 4 On March 25, 2020, the plaintiff filed its complaint pursuant to the Deceptive Trade Practices Act and the Consumer Fraud Act. As ultimately amended, the plaintiff's complaint alleged generally that each defendant "omit[s] from its labeling" and "fail[s] to disclose" that its cleaning products contain excessive amounts of phosphorus, in violation of the Regulation of Phosphorus in Detergents Act (Detergents Act) (415 ILCS 92/5 (West 2020)), as well as excessive amounts of volatile organic material (VOM), in violation of an environmental regulation promulgated by the Pollution Control Board (VOM regulation) (35 Ill. Adm. Code 223.205(a)(17)(B) (2012)). The complaint asserted that the amounts of phosphorus and VOM in the defendants' products render the products "illegal in Illinois," unbeknownst to the commercial carpet cleaning companies that purchase the defendants' products. The complaint further alleged that this harms the plaintiff because the plaintiff's "products comply with Illinois law" and the carpet cleaning companies "prefer and purchase [the defendants'] products because they contain [phosphorus] and clean better, albeit illegally."

¶ 5    The plaintiff's complaint contained separate counts directed against each defendant alleging identical violations of the Deceptive Trade Practices Act and the Consumer Fraud Act. In the Deceptive Trade Practices Act counts, the complaint alleged that each defendant distributed and sold its products in Illinois while "omitting the material fact" that the products "violate Illinois law." This created "a likelihood of confusion or misunderstanding" and, therefore, according to the complaint, constituted a deceptive trade practice within the meaning of the Deceptive Trade Practices Act. The complaint further alleged that each defendant willfully engaged in these deceptive practices and that the plaintiff "suffered and continues to suffer a loss of the ability to compete in the marketplace and a loss of sales" caused by the deceptive practices. The complaint asked the circuit court to find that the defendants willfully engaged in deceptive trade practices, to enjoin the defendants from distributing or selling their products in Illinois, to award the plaintiff attorney fees, and for other "just and proper" relief.

¶ 6    In the Consumer Fraud Act counts, the plaintiff's complaint alleged that the defendants each employed "deception, fraud and false pretenses to conceal, suppress and omit the material facts" that their products "do not comply with Illinois law" and that the products "exposed reasonable consumers to unwanted, harmful, illegal levels of chemical exposure." The complaint further alleged that the defendants intended for others to rely upon these material omissions and that, if the defendants had stated on their labeling or packaging that their products are "illegal under Illinois law and that they could neither be purchased nor sold legally in Illinois, then no reasonable person would purchase" those products. The complaint asserted that the plaintiff "is unable to fairly compete" with the defendants and, therefore, the defendants' "conduct directly and proximately caused substantial injury" to the plaintiff. The complaint asked the circuit court to find that the defendants willfully violated the Consumer Fraud Act; to enjoin the defendants from distributing or selling their products in Illinois; to award the plaintiff actual damages, reasonable attorney fees, and costs; to assess punitive damages against the defendants for their "willful violations of Illinois law"; and for other "just and proper" relief.

¶ 7    The plaintiff's complaint also contained a single count alleging a civil conspiracy by two of the defendants, Jon-Don, LLC, and Legend Brands, Inc. The complaint alleged that the two defendants entered into an agreement to develop and sell carpet cleaning products that violate Illinois environmental laws. That agreement is alleged to have caused the plaintiff "to suffer a significant loss of sales."

¶ 8    The defendants filed separate motions to dismiss the plaintiff's complaint for failure to state a cause of action under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)), as well as motions to dismiss the complaint for lack of standing under section 2-619 of the Code (*id.* § 2-619). The defendants adopted each other's arguments.

¶ 9    Following a hearing on the defendants' motions, the circuit court dismissed the plaintiff's complaint with prejudice. Relevant here, the circuit court determined that "the State maintains exclusive enforcement authority" over the environmental laws at issue in this case and, therefore, the violations of those laws cannot be "within the scope of conduct" covered by the Deceptive Trade Practices Act and the Consumer Fraud Act. The circuit court concluded that the plaintiff could not use the Deceptive Trade Practices Act and the Consumer Fraud Act as a "back door method" to bring an otherwise impermissible private cause of action against the defendants for violation of the State's environmental laws. Accordingly, the circuit court

dismissed the Deceptive Trade Practices Act and the Consumer Fraud Act counts of the plaintiff's complaint for failure to state a cause of action.

¶ 10 The circuit court also found that the plaintiff had failed to establish standing with respect to its claims under the Consumer Fraud Act. The circuit court further determined that, to establish standing for these claims, the plaintiff was required to satisfy the so-called "consumer nexus test," since the plaintiff was not a purchaser or consumer of the defendants' products. The circuit court concluded that the plaintiff did not satisfy this test because the defendants' alleged conduct, which formed the basis of the plaintiff's complaint, was directed at other businesses. Specifically, the defendants' conduct was directed at businesses such as commercial carpet cleaning companies and was not marketed to consumers directly or generally. The trial court then dismissed the remaining civil conspiracy claim since it was "based on the same alleged conduct" as the other failed claims.

¶ 11 The plaintiff appealed, and the appellate court reversed the judgment of the circuit court. 2022 IL App (5th) 210210-U. The appellate court held that the circuit court erred in finding that violations of the Detergents Act and the VOM regulation could not form the basis for claims under the Deceptive Trade Practices Act and the Consumer Fraud Act. *Id.* ¶ 28. The appellate court reasoned that, while environmental laws are enforced by the State, the plaintiff's claims were not brought under those laws. *Id.* ¶ 27. "Rather, the plaintiff invoked those laws and regulations as evidence to support its claims of unfair competition and unfair practices." *Id.* The appellate court found that the plaintiff's complaint simply used the environmental laws as "a quantum of proof regarding the deceptive actions." *Id.* ¶ 28. The appellate court therefore held that the circuit court improperly dismissed the plaintiff's complaint on the grounds that violations of the Detergents Act and the VOM regulation could not support its claims under the Consumer Fraud Act and the Deceptive Trade Practices Act. *Id.*

¶ 12 The appellate court then turned to the circuit court's determination that the plaintiff did not establish standing for its Consumer Fraud Act claims. *Id.* ¶ 39. The appellate court noted that the Consumer Fraud Act's protections are not limited to consumers, as the full title of the Consumer Fraud Act is " 'An Act to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ***.' " *Id.* ¶ 42 (quoting *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 214 Ill. App. 3d 1073, 1082 (1991)). Because the plaintiff conceded it is not a consumer of the defendants' products, the appellate court stated it needed to determine "whether the plaintiff has alleged sufficient facts to establish standing under the 'consumer nexus' test." *Id.* ¶ 43. The appellate court found that the plaintiff satisfied the consumer nexus test because it alleged that the defendants directed deceptive practices toward consumers and created an anticompetitive effect on the market. *Id.* ¶ 45. Thus, the appellate court held that the plaintiff had established standing through the consumer nexus test for its Consumer Fraud Act claims and so the circuit court improperly dismissed the plaintiff's complaint for lack of standing. *Id.* Finally, the appellate court held that, since the plaintiff adequately asserted claims under the Consumer Fraud Act and the Deceptive Trade Practices Act, its civil conspiracy claim also survived. *Id.* ¶ 62.

¶ 13 This court granted the defendants' petition to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). We allowed the Illinois Trial Lawyers Association leave to file an *amicus curiae* brief in

- 4 -

support of the plaintiff. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 14                                    ANALYSIS
¶ 15                        Deceptive Trade Practices Act Claims
¶ 16        The Deceptive Trade Practices Act states, in relevant part, that

"[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person:
                   ***

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods ***;
                   * * *

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have ***; [or]
                   * * *

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(2), (5), (12) (West 2020).

¶ 17        The purpose of the Deceptive Trade Practices Act is to prohibit unfair competition. *Phillips v. Cox*, 261 Ill. App. 3d 78, 81 (1994). As such, the statute " 'is primarily directed towards acts which unreasonably interfere with another's conduct of his business.' " *Id.* (quoting *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 98 (1992)). The Deceptive Trade Practices Act does not provide a private cause of action for damages. *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 253 (1985). Instead, the statute authorizes private lawsuits for injunctive relief. 815 ILCS 510/3 (West 2020) ("A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable."); see *Glazewski*, 108 Ill. 2d at 252 (noting that plaintiffs under the Deceptive Trade Practices Act will "often be more interested in stopping the unlawful conduct than collecting damages, which may not be readily measurable").

¶ 18        In this case, the defendants contend that, as a matter of law, the plaintiff has not pled a deceptive act or practice within the meaning of the Deceptive Trade Practices Act. The defendants rest their argument on the premise that both the Detergents Act and Illinois's Environmental Protection Act (Act) (415 ILCS 5/1 *et seq.* (West 2020)) and its associated regulations "can only be enforced by the State." The defendants argue that the Deceptive Trade Practices Act cannot be used by the plaintiff "to assert claims that rest entirely on allegations that [the defendants] have violated environmental laws that are not otherwise privately enforceable." To allow the plaintiff's claims to go forward under the Deceptive Trade Practices Act, the defendants reason, would impermissibly create a private cause of action for violations of environmental laws when such an action is not permitted under Illinois law. For this reason, the defendants contend, the circuit court properly dismissed the Deceptive Trade Practices Act claims.

¶ 19        We agree with the defendants that the circuit court properly dismissed the plaintiff's Deceptive Trade Practices Act claims. However, we reach this result for reasons other than those asserted by the defendants.

- 5 -

¶ 20    Contrary to the defendants' assertions, the State does not maintain the exclusive authority to enforce environmental laws in Illinois. Section 45(b) of the Act provides that "[a]ny person adversely affected in fact by a violation of this Act" or of regulations adopted thereunder "may sue for injunctive relief against such violation." *Id.* § 45(b). Significantly though, this statement comes with an important qualification. The next sentence of section 45(b) states that "no action shall be brought under this Section until 30 days after the plaintiff has been denied relief by the Board in a proceeding brought under subsection (d)(1) of Section 31 of this Act." *Id.* Section 31(d)(1) of the Act provides, in turn, that "[a]ny person may file with the [Pollution Control] Board a complaint *** against any person allegedly violating this Act, any rule or regulation adopted under this Act, any permit or term or condition of a permit, or any Board order." *Id.* § 31(b).

¶ 21    Notably, the Act expressly authorizes the State, through the attorney general or a state's attorney, to file original actions for injunctive relief in the circuit court for violations of environmental laws and regulations. See *id.* § 43(a). However, no such authorization exists for the filing of injunctive claims by private parties. Instead, for private parties, the plain language of section 45(b) dictates that a plaintiff seeking injunctive relief based on environmental violations *must first* pursue an administrative remedy before the Pollution Control Board, the adjudicative body charged with hearing environmental disputes.

¶ 22    For private parties, section 45(b) bars a complaint for injunctive relief in circuit court based on violations of environmental laws until a ruling from the Pollution Control Board is first obtained. That did not happen here. The alleged violations of both laws underlying the plaintiff's complaint could have been brought under section 31(d)(1): the Detergents Act is enforced by the Pollution Control Board (415 ILCS 92/5(e) (West 2020)), and the VOM regulation was promulgated by the Pollution Control Board under the authority of the Act (415 ILCS 5/27(a) (West 2020)). Yet, despite this available procedural avenue, counsel for the plaintiff indicated during oral argument before this court that the plaintiff has not sought nor pursued administrative relief.

¶ 23    The plaintiff notes that its primary reason for seeking an injunction to stop the defendants from selling their products was to prevent the loss of the plaintiff's customers and not to protect the public from environmental harm caused by the defendants. Nevertheless, the fact remains that the relief sought by the plaintiff under its Deceptive Trade Practices Act claims—an injunction based on violations of the relevant environmental laws—is indistinguishable from what is initially required to be considered by the Pollution Control Board. Fundamentally, the plaintiff's Deceptive Trade Practices Act claims in this case are not "substantially different than the normal dispute over alleged environmental damage which the legislature has determined should be brought in the first instance before the Pollution Control Board when not brought by a public official." *Decatur Auto Auction, Inc. v. Macon County Farm Bureau, Inc.*, 255 Ill. App. 3d 679, 685 (1993). Accordingly, the plaintiff's claims under the Deceptive Trade Practices Act seeking injunctive relief for violations of the Detergents Act and the VOM regulation must be dismissed for failure to exhaust administrative remedies. *Id.*

¶ 24                              Consumer Fraud Act Claims

¶ 25    Unlike the plaintiff's Deceptive Trade Practices Act claims, its claims under the Consumer Fraud Act are not limited solely to seeking injunctive relief. For this reason, our analysis

regarding the Deceptive Trade Practices Act claims cannot completely resolve the Consumer Fraud Act claims. Nevertheless, for the following reasons, we conclude that the circuit court properly dismissed those counts of the plaintiff's complaint alleging a violation of the Consumer Fraud Act.

¶ 26 A plaintiff who asserts a private cause of action under section 10a(a) of the Consumer Fraud Act must allege the following elements: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002); see *De Bouse v. Bayer*, 235 Ill. 2d 544, 550 (2009); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72 (2007); *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 180 (2005). Section 10a(a) of the Act expressly requires proof that the plaintiff suffered "actual damage," as well as proof that the damage occurred "as a result of" a violation of the Consumer Fraud Act. 815 ILCS 505/10a(a) (West 2020); *Oliveira*, 201 Ill. 2d at 149. This statutory language "imposes a proximate causation requirement" for private causes of action under the Consumer Fraud Act. *Oliveira*, 201 Ill. 2d at 149. In order to establish the element of proximate causation, a plaintiff must prove that it was actually deceived by the misrepresentation. *Avery*, 216 Ill. 2d at 199. If the plaintiff has neither seen nor heard a deceptive statement, it cannot have relied on the statement and, consequently, cannot prove that the statement was the proximate cause of its injury. *De Bouse*, 235 Ill. 2d at 555.

¶ 27 This court elaborated on the proximate causation requirement in *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 (2004). There, a group of homeowners filed a private cause of action under the Consumer Fraud Act against the manufacturer of the composite siding on their homes. *Id.* at 519-20. The homeowners alleged that the manufacturer had deceptively advertised the composite siding, making false representations as to its quality and failing to disclose that the siding had a " 'high rate of failure' " and required " 'highly particularized maintenance.' " *Id.* at 520. The homeowners conceded that they had not received any representations regarding the siding from the manufacturer. *Id.*

¶ 28 Relying on *Oliveira*, this court held that, because the deceptive advertising was not received by the homeowners, it could not be the proximate cause of their injuries. *Id.* at 525. We explained:

> "[The homeowners'] complaint in this case does not allege that any deceptive advertising by [the manufacturer] was received by any [homeowner], or that it was received by any builder, architect, engineer, or other like person somehow connected with a [homeowner]. *** The advertising in *Oliveira* and in this case did not in any way deceive the plaintiffs, and thus could not have proximately caused the claimed damages, whatever their nature." *Id.*

While the deceptive statements need not be conveyed directly to the plaintiffs, proximate cause requires that the plaintiffs must be the intended target of the alleged deception. *Id.* Accordingly, because the homeowners' pleadings relied *only* on an alleged deception of unspecified persons having no demonstrated connection to the homeowners, their Consumer Fraud Act claim failed. *Id.* at 528.

¶ 29 Like the homeowners in *Shannon*, the plaintiff in this case fails to allege in its complaint that the defendants intended for *the plaintiff* to rely upon the alleged misrepresentations on

their product labels. Rather, the plaintiff alleges that the defendants intended for *the carpet cleaning companies that purchased the defendant's products* to rely upon the alleged misrepresentations. Furthermore, the plaintiff concedes it is not a purchaser or consumer of the defendants' products. The allegations in the plaintiff's complaint thus are insufficient to establish the proximate cause element for a cause of action under the Consumer Fraud Act. See *Oliveira*, 201 Ill. 2d at 149 (to adequately plead a private cause of action for a violation of the Consumer Fraud Act, a plaintiff must allege a deceptive act or practice by the defendant *and* the defendant's intent that the plaintiff rely on the deception). As such, the plaintiff has failed to plead all the elements of a Consumer Fraud Act claim.

¶ 30    Nevertheless, the appellate court below held that the plaintiff sufficiently alleged a cause of action under the Consumer Fraud Act because it satisfied the so-called "consumer nexus test." 2022 IL App (5th) 210210-U, ¶¶ 43-45. Although the appellate court couched its holding in a discussion about "standing," the practical effect of the appellate court's ruling was to excuse the plaintiff from pleading the proximate cause element of its cause of action. We disagree with this analysis.

¶ 31    The term "consumer nexus" does not appear in the Consumer Fraud Act, and this court has never addressed the "consumer nexus test." The first mention of the term in the appellate court appeared in a 1998 decision, *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146 (1998). In *Brody*, the plaintiffs filed a complaint for breach of implied contract, common-law fraud, and a violation of the Consumer Fraud Act against the defendant medical school. *Id.* at 149. The plaintiffs alleged that the defendant falsely represented that students who enrolled in the defendant's "Applied Physiology Program" and received a grade point average of 3.0 or higher would be admitted to the defendant's medical school; then it reneged on that promise on the first day of orientation. *Id.* Following a trial, the circuit court ruled that the plaintiffs failed to introduce sufficient evidence in support of their cause of action under the Consumer Fraud Act, and it entered a judgment for the defendant on that claim. *Id.* at 152-53. The appellate court affirmed the trial court's judgment as to the Consumer Fraud Act claim. *Id.* at 160-61.

¶ 32    The *Brody* court first held that the evidence at trial established all the required elements for a violation of the Consumer Fraud Act. *Id.* at 158. Nevertheless, the court held that the plaintiffs' claim failed because they did not satisfy their obligation to "plead an implication of consumer protection concerns" in their complaint. *Id.* at 159-60. The court held that the Consumer Fraud Act is not intended to apply to every commercial transaction or every dispute arising from a breach of contract. *Id.* at 158-59. In short, "[a] breach of contract, without more, is insufficient to sustain a cause of action cognizable under the Consumer Fraud Act." *Id.* at 159. For this reason, the court held, claims brought under the Consumer Fraud Act must satisfy the " 'consumer nexus test.' " *Id.* The court explained that this test involves the following inquiry:

> " '[W]here a plaintiff attempts to allege a violation of the [Consumer Fraud] Act in a case which appears on its face to involve only a breach of contract, the relevant inquiry is "whether the alleged conduct [involves trade practices addressed to the market generally or otherwise] implicates consumer protection concerns." ' " *Id.* at 159 (quoting *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical*

*Contractors, Inc.*, 275 Ill. App. 3d 452, 459 (1995), quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534 (1989)).

¶ 33    To the extent that the appellate court below applied the consumer nexus test as set forth in *Brody*, we find that *Brody* and its progeny have no bearing on this case. This case does not involve a breach of contract or any other commercial transaction between the parties. The plaintiff has not alleged *any* contractual or transactional relationship between itself and the defendants. Accordingly, we make no ruling on the validity of the consumer nexus test if it takes place in the context of a complaint arising out of an alleged breach of contract.

¶ 34    We recognize, however, that there is another line of state and federal cases that have applied the "consumer nexus test" in a slightly different fashion. For instance, in *Downers Grove Volkswagen, Inc.*, a car dealership filed suit against another car dealership, alleging three claims: a violation of the Consumer Fraud Act, tortious interference with business, and libel, all based on the defendant's brochure that allegedly reported false information about the plaintiff's services. *Downers Grove Volkswagen, Inc.*, 190 Ill. App. 3d at 526. The trial court dismissed the plaintiff's Consumer Fraud Act count for failure to state a cause of action because the plaintiff was not a "consumer" under the Act. *Id.* at 527. The appellate court reversed the judgment of dismissal. *Id.* at 534.

¶ 35    The appellate court in *Downers Grove Volkswagen, Inc.* stated that the Consumer Fraud Act should be liberally construed and is not limited exclusively to the protection of consumers. *Id.* The court further held that, where a Consumer Fraud Act claim involves a dispute between two businesses who are not consumers of each other's products, a court should apply the following test to determine whether the claim is actionable:

> " '[D]eceptive conduct is not actionable under the Consumer Fraud Act unless the conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. [Citation.] However, businesses have standing to sue under the Consumer Fraud Act to redress competitive injury they suffer when other businesses deceive customers. [Citation.]' " *Id.* at 532 (quoting *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987)).

¶ 36    Applying this test, the appellate court held, "[h]ere, where plaintiff has alleged defendant published false information about its prices for services, plaintiff has alleged conduct which implicates consumer-protection concerns. Thus, plaintiff has standing to sue under the [Consumer Fraud] Act." *Id.* at 534. Having found that the plaintiff alleged it had standing pursuant to the test set forth above, the appellate court reversed the circuit court's judgment dismissing the complaint for the failure to plead a sufficient cause of action under the Consumer Fraud Act. *Id.*

¶ 37    Subsequent cases in our appellate court and the federal courts have referred to the test set forth in *Downers Grove Volkswagen, Inc.*, 190 Ill. App. 3d at 534, as the "consumer nexus test" and applied it to a variety of disputes involving Consumer Fraud Act claims brought by businesses who are not consumers of the defendant's products. However, the problem with this body of case law is that it is irreconcilable with the language in the Consumer Fraud Act that imposes a proximate cause requirement. As we explained in *Oliveira*, the statutory language expressly requires a plaintiff to plead and prove that the deceptive act or practice proximately caused the plaintiff's injury, which means that *the plaintiff* must be the intended target of the

alleged deception. *Oliveira*, 201 Ill. 2d at 149; *Shannon*, 208 Ill. 2d at 525. Moreover, *Downers Grove Volkswagen, Inc.*, and many cases that adopted the analysis in that opinion predated this court's decision in *Oliveira*, where we held that a plaintiff who brings a cause of action under the Consumer Fraud Act must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira*, 201 Ill. 2d at 149.

¶ 38    Accordingly, to the extent that *Downers Grove Volkswagen, Inc.* and other appellate court decisions hold that a business bringing a claim under the Consumer Fraud Act need not allege or establish all the elements set forth in *Oliveira*, those decisions are overruled. A business plaintiff *must* meet the same requirements and allege the same elements as any other plaintiff when bringing a claim under the Consumer Fraud Act. There is no "consumer nexus" exemption that relieves a business plaintiff from alleging facts in support of the element of proximate cause. Because the plaintiff in this case did not plead that it was the intended recipient of the defendants' alleged deceptions, it failed to plead all the elements of a Consumer Fraud Act claim. Accordingly, the circuit court correctly dismissed those counts of the plaintiff's complaint alleging a violation of the Consumer Fraud Act.

¶ 39                                          Civil Conspiracy

¶ 40    "Civil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 19. To state a civil conspiracy claim, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement. *Id.* ¶ 20.

¶ 41    The essence of a conspiracy claim is not the agreement but rather the tortious acts performed in furtherance of the agreement. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63 (1994). It necessarily follows, therefore, that a conspiracy is not an independent tort and, where a plaintiff fails to state an independent cause of action underlying the conspiracy allegations, the claim for conspiracy also fails. See *Süd Family Ltd. Partnership v. Otto Baum Co.*, 2024 IL App (4th) 220782, ¶ 59.

¶ 42    Here, the parties do not dispute that the plaintiff's conspiracy claim rests upon the validity of the Deceptive Trade Practices Act and the Consumer Fraud Act claims. For the reasons set forth above, the plaintiff has failed to state an independent cause of action under either of those statutes. Consequently, the circuit court correctly dismissed the civil conspiracy count of the plaintiff's complaint.

¶ 43                                            CONCLUSION

¶ 44    For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court dismissing the plaintiff's complaint is affirmed.

¶ 45    Appellate court judgment reversed.

¶ 46    Circuit court judgment affirmed.